PEOPLE v WACKERLE

Docket No. 90359. Submitted November 14, 1986, at Lansing. Decided
    December 16, 1986.

    Defendant, Neil T. Wackerle, was convicted, following a second
    trial, of false pretenses over one hundred dollars, Midland
    Circuit Court, Tyrone Gillespie, J. Defendant's first trial re-
    sulted in a mistrial due to a hung jury. During the second trial
    the prosecutor introduced defendant's prior testimony into his
    case in chief. He then introduced evidence to show that defen-
    dant's prior testimony was false. Defendant appealed.

    The Court of Appeals *held:*

    1. The prior testimony of a defendant is admissible at subse-
    quent trials and a prosecutor may introduce other evidence to
    show that the defendant's prior testimony was false.

    2. The trial court did not err in failing to give a limiting
    instruction on the purpose for which the prior testimony was
    introduced, since no such instruction was requested.

    Affirmed.

1. Criminal Law — Evidence — Prior Testimony of Defendant.

    The prior testimony of a defendant is admissible at subsequent
    trials and a prosecutor may introduce other evidence to show
    that the defendant's prior testimony was false.

2. Evidence — Limiting Instructions — Rules of Evidence.

    Where evidence is admissible for one purpose but not for others,
    the trial court need only give a limiting instruction when
    requested (MRE 105).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Gerald L. White,* Prose-
cuting Attorney, and *Richard E. Priehs,* Assistant
Prosecuting Attorney, for the people.

References

Am Jur 2d, Evidence §§ 249 *et seq.;* 1082.

Use or admissibility of prior inconsistent statements of witness as
    substantive evidence of facts to which they relate in criminal case
    —modern state cases. 30 ALR4th 414.

*James E. Wilson,* for defendant.

Before: R. B. Burns. P.J., and Gribbs and A. T. Davis,* JJ.

Per Curiam. Defendant was convicted, following a second jury trial, of false pretenses over $100. MCL 750.218; MSA 28.415. Defendant's first trial resulted in a mistrial due to a hung jury. Defendant was sentenced to four years probation, thirty days in the county jail, plus costs, fines, restitution and one hundred hours of community service. He now appeals and we affirm.

This case involves an insurance claim made by defendant after an alleged deer accident on August 19 or 20, 1984. Defendant obtained a 1966 Corvette from one Michael Cupp in late July, 1984. According to Cupp, he had been involved in an accident with the vehicle on July 19, 1984, in which he rear-ended a car in front of him. The Corvette sustained front-end damage. Cupp testified that he did not repair the car and that it was delivered to defendant in a damaged condition. Cupp stated that photographs of the damage from the alleged deer accident appeared similar to the damage to the vehicle after his own accident, but he was not entirely certain if it was the same.

Kenneth J. Roy, the owner of Ken's Vette Shop in Saginaw, testified that Cupp brought the Corvette to his body shop on July 21, 1984, with front-end damage and sought a repair estimate. Roy estimated the cost of repairs to be between $1,400 and $1,800. He stated that the photographs of the car taken after the alleged deer accident resembled the condition of the car when it was brought to his shop. Roy did not indicate that he repaired the car.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Daniel Miller, a AAA sales agent, testified that he issued an automobile insurance policy to defendant on August 7, 1984, for a 1966 Corvette. Although Miller did not see the vehicle, defendant represented that it was in "great shape."

Another AAA employee, Thomas J. Maul, who was the claims adjuster assigned to defendant's claim, inspected the vehicle on August 21, 1984. Defendant claimed the damage resulted from a collision with a deer on August 19 or 20, 1984.[1] His inspection revealed no evidence of a deer collision, such as deer hair imbedded in the vehicle. Defendant claimed he had thoroughly washed the vehicle prior to taking it to the body shop, which was where Maul had inspected the vehicle. Although Maul was suspicious of the claim, he had no real evidence at the time to withhold payment on the claim and, therefore, he paid on the claim in the amount of $1,629.80.

Thomas J. Pfeffer also testified and stated that he had known defendant for some time. According to Pfeffer, defendant contacted him in August, 1984, and said he was having difficulty settling an insurance claim. He requested Pfeffer to state, if contacted by the insurance company, that he witnessed the deer accident.

Although defendant did not testify at the second trial, he did testify at the first trial and that testimony was read to the jury at the prosecutor's request during the people's case in chief. Defendant's testimony essentially indicated that defendant had performed the repairs on the Corvette himself after Cupp's accident, that the car was in good shape on August 6 when he procured the insurance and that he subsequently struck a deer.

[1] The date of the accident is given alternately as the 19th or the 20th. Apparently, defendant claimed the accident occurred at 3 A.M. on the 20th.

Defendant's sole issue on appeal concerns the admission of his prior testimony during the prosecutor's case in chief. Defendant admits that a defendant's testimony is generally admissible at subsequent retrials. See *People v Gardner,* 122 Mich App 20; 329 NW2d 518 (1982); *People v Thompson,* 97 Mich App 319; 293 NW2d 812 (1980). See also *People v Hunley,* 63 Mich App 97; 234 NW2d 169 (1975).

However, defendant points out that *Gardner* and *Thompson* do not explicitly state what purpose or purposes a defendant's prior testimony may be used for. In admitting defendant's prior testimony, the trial court relied upon *People v Dandron,* 70 Mich App 439; 245 NW2d 782 (1976). In *Dandron,* this Court concluded that defendant's proved-to-be-false exculpatory statements made to the police could be used as evidence of substantive guilt:

> A prosecutor may, in certain instances, offer as circumstantial evidence of guilt evidence that exculpatory statements are false. The *McConney* [*United States v McConney,* 329 F2d 467 (CA 2, 1964)] case, cited in *Johnson* [*People v Johnson,* 4 Mich App 205; 144 NW2d 646 (1966)], supports this proposition:
> "It is true that *exculpatory statements made to law enforcement officials, when shown to be false,* are circumstantial evidence of guilty consciousness and *have independent probative force."* 329 F2d at 470. (Emphasis supplied.) [70 Mich App 442.]

Defendant attempts to distinguish *Dandron* because it dealt with statements made to the police, not prior testimony. We believe *Dandron* is applicable to prior testimony as well. If it can be said that false exculpatory statements made to police are evidence of guilt, it follows that sworn testimony made in open court must be even stronger

evidence of guilt. That is, while an innocent person may have motive to make false exculpatory statements, such as to protect guilty third parties as well as themselves, presumably the motivation must be stronger to cause an innocent person to commit the much more serious offense of giving false testimony. Accordingly, shown-to-be-false exculpatory testimony is even stronger circumstantial evidence of guilt than a mere false statement to police. Thus, the *Dandron* holding is even more applicable to prior false testimony than to false statements made to police.

To the extent defendant argues on appeal that the prosecutor improperly introduced testimony to prove defendant's prior testimony to be false, we disagree. *Dandron, supra,* pp 443-444, elaborated on its holding as follows:

> We add that substantive use of proved-to-be false exculpatory statements is not a novel idea in this state. As early as *People v Arnold,* 43 Mich 303; 5 NW 385 (1880), we find the roots of this doctrine:
>
> "Defendant has no claim to be protected against the exposure of this falsehood where he indulges in it for his own exculpation. He runs the risk of this exposure when he invents a false defense.
>
> * * *
>
> "It was never doubted that the conduct of a suspected party when charged with a crime may be put in evidence against him when it is such as an innocent man would not be likely to resort to. Thus, it may be shown that he made false statements for the purpose of misleading or warding off suspicion; though these are by no means conclusive of guilt, they may strengthen the inferences arising from other facts.
>
> * * *
>
> "All these attempts to avoid a trial, to evade conviction by frauds upon the law, or to lead suspicion and investigation in some other direction

by false or covert suggestions or insinuations, are so unlike the conduct of innocent men that they are justly regarded as giving some evidence of a consciousness of guilt. They do not prove it, but the jury are entitled to consider and weigh them in connection with the more direct evidence.

*   *   *

"In this case the prosecution were allowed to show that the defendant had deliberately fabricated a false statement which, if true, would have been sufficient for his full exculpation. What conduct could possibly be more suggestive of guilt?" 43 Mich at 304-306.

In *People v Hoffman,* 142 Mich 531; 105 NW 838 (1905), one finds further support for the admissibility and significance of false exculpatory statements:

"It is common practice, in the trial of criminal cases, to show that the accused has made self-serving explanatory statements concerning the circumstances of the offense with which he is charged and his connection therewith, and that such statements were untrue. Such statements are not, in the ordinary sense in which the word is used, though perhaps strictly so, admissions, nor are they confessions. They are sometimes classed as conduct of the accused."

If a prosecutor may use a defendant's "proved-to-be false exculpatory statements" as evidence of guilt, then it follows that the prosecutor must be afforded the opportunity to establish the falsity of defendant's statements. Similarly, in the case at bar, the trial court properly permitted the prosecutor to put on witnesses to establish that defendant's prior testimony was false.

This brings us to the question that defendant most clearly frames for us, namely whether the trial court should have given the jury a limiting instruction on the use of defendant's prior testimony. It is unnecessary to address the question of

whether a limiting instruction was necessary as none was requested. If evidence is admissible for one purpose, but not others, the trial court must give a limiting instruction *upon request*. MRE 105.

In the case at bar, after the trial court explained how it was going to instruct the jury on defendant's testimony, defense counsel stated:

> And I think that's a proper—that's exactly how I want it with—with Neil's testimony. That gives me exactly what I think is fair and the record should show.

Defense counsel was obviously satisfied with the instructions given at trial and we will not now entertain objections to those instructions.

Affirmed.