PEOPLE v SEALS

Docket Nos. 282215 and 282216. Submitted April 14, 2009, at Grand Rapids. Decided July 14, 2009, at 9:00 a.m.

A jury in the Kent Circuit Court, Mark A. Trusock, J., convicted Nicholas J. Seals and Lewis A. Seals of felony murder. Both defendants appealed, and their appeals were consolidated.

The Court of Appeals *held*:

1. A prosecutor may, in certain instances, offer evidence that an exculpatory statement is false as circumstantial evidence of guilt. The trial court properly allowed the prosecution an opportunity to establish the falsity of exculpatory statements Nicholas Seals made in his prior sworn testimony pursuant to an investigative subpoena from the prosecution.

2. The Fifth Amendment privilege against compelled self-incrimination can be asserted in any proceeding and protects against any disclosures that a witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used, i.e., other evidence that would furnish a link in the chain of evidence needed to prosecute a claimant of the privilege. The introduction at trial of Nicholas Seals's testimony pursuant to the investigative subpoena was not violative of his Fifth Amendment privilege. The testimony was not coerced or self-incriminating, nor did it provide a link in the chain of evidence necessary for his prosecution.

3. Nicholas Seals's exculpatory testimony pursuant to the investigative subpoena was not evidence of other crimes, wrongs, or acts, which would be inadmissible under MRE 404(b). His testimony pursuant to the investigative subpoena was properly introduced at trial. MRE 404(b) was not violated to the extent that such testimony led to testimony by a police officer regarding police contact with Nicholas Seals when he had a gun and illicit drugs on his person. MRE 404(b) allows the admission of "other bad acts" evidence to show proof of motive, opportunity, or intent. Police testimony that Nicholas Seals had previously bought or used drugs and handled guns could be used to demonstrate motive and opportunity with respect to the home invasion, larceny, and murder that led to the prosecution of the defendants in this case.

4. The expiration of the statutory period of limitations applicable to the predicate felonies of home invasion and larceny does not bar Nicholas Seals's prosecution and conviction for felony murder. The felony-murder statute, MCL 750.316(b), requires only proof that the murder occurred during the commission of the underlying felony. There is no additional requirement that the defendant be charged and convicted of the underlying felony.

5. Nicholas Seals was not denied the effective assistance of counsel at trial. His claim of ineffective assistance of counsel is based on counsel's failure to object to the felony-murder charge and to the admission of his testimony pursuant to the investigative subpoena. Because counsel for Lewis Seals had objected to the admission of the investigative-subpoena testimony on behalf of both defendants, counsel for Nicholas Seals did not need to raise the same objection. With respect to the failure to object to the felony-murder charge on the basis of the expiration of the statutory period of limitations for the underlying felony, there was no binding authority for such an objection at the time of trial. Counsel cannot be deemed ineffective for failing to raise an objection because he lacked a basis for it and because the statute-of-limitations issue has now been resolved unfavorably to Nicholas Seals.

6. A remand of Nicholas Seals's case is necessary so that the judgment of sentence can be corrected to reflect sentence credit for the time he spent incarcerated between his arrest and sentencing.

7. Lewis A. Seals was not denied the effective assistance of counsel at trial on the asserted ground that counsel failed to call witnesses who could establish an alibi. Counsel could not call such witnesses because the requirements of MCL 768.20(1) regarding notice of an alibi defense had not been fulfilled. Nothing in the lower court record suggests that the witnesses could have provided Lewis Seals with an alibi. Furthermore, the failure to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court does not substitute its judgment for that of counsel in matters of trial strategy. In any event, there was sufficient other evidence of Lewis Seals's guilt.

8. The prosecutor at trial did not improperly vouch for, or bolster the testimony of, police officers when she stated in her opening statement that the officers in the cold-case team "do their jobs" and "don't rush to judgment." In making those assertions, the prosecutor merely indicated that the police did not merely rely on a convicted felon's statements against the defendants, but undertook further investigation. The prosecutor, in stating that neither she nor the police would benefit from bringing a case

unless they were sure they had the perpetrator, made an improper comment. However, a new trial is not warranted because the comment was not outcome-determinative in light of the strong evidence against Lewis Seals.

Affirmed; remanded for correction of Nicholas Seals's judgment of sentence.

HOMICIDE — FELONY MURDER — UNDERLYING FELONIES — STATUTES OF LIMITATIONS.

The felony-murder statute requires only proof that the murder occurred during the commission of the underlying felony; the defendant need not be charged and convicted for the underlying felony in order to be convicted of felony murder; the expiration of the statutory period of limitations for the underlying felony does not bar prosecution and conviction for felony murder (MCL 750.316[b]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *Kimberly M. Manns*, Assistant Prosecuting Attorney, for the people.

*P. E. Bennett* for Nicholas J. Seals.

*Neil J. Leithauser* for Lewis A. Seals.

Before: WILDER, P.J., and METER and SERVITTO, JJ.

PER CURIAM. In these consolidated appeals, defendants appeal as of right their jury trial convictions of felony murder, MCL 750.316(b). We remand Docket No. 282215 to the trial court for the purpose of correcting defendant Nicholas Seals's judgment of sentence, but affirm both cases in all other respects.

Defendants were charged in connection with the 1996 shooting death of George Powell. In November 1996, defendants, along with another individual, broke into the home Mr. Powell shared with his roommate, Marlon Jackson, believing that no one was present in

the home. Defendants and their accomplice apparently intended to steal whatever drugs and money they could find. When it was discovered that Mr. Powell was at home, defendant Lewis Seals shot and killed him.

DOCKET NO. 282215

On appeal, defendant Nicholas Seals first contends that the prosecution's use of his alleged involuntary investigative subpoena testimony, to impeach his credibility, violated his right against compelled self-incrimination and his rights to due process. We disagree.

Defense counsel objected to the admission of the investigative subpoena testimony on the basis that it was inadmissible as other "bad acts" under MRE 404(b). However, there was no objection to the admission of the evidence based on the constitutional issue now raised. Because this constitutional issue was not preserved, we review it for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

To avoid forfeiture of a nonpreserved constitutional error under the plain error rule, three requirements must be met: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights. *Id.* at 763. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id.* Even if a defendant satisfies these three requirements, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 764-767. We review a trial court's decision to admit evidence for abuse of

discretion; however, we review de novo a preliminary question of law involved in that decision. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

Here, Detective Erik Boillat testified that he questioned Nicholas J. Seals twice, under oath, pursuant to an investigative subpoena in October 2006. According to Boillat, Nicholas Seals denied any knowledge of the murder, denied any connection with drugs at the time of the murder, and denied any connection with guns. Detective Boillat also testified about contacts with defendant both before and after the murder, including one where Nicholas Seals was found to be in possession of marijuana and one where he had accidentally shot himself. The recorded investigative subpoena testimony was played for the jury at trial. Defendant first asserts that use of the investigative subpoena testimony to impeach him, when he did not testify at trial, was improper. We disagree.

A prosecutor may, in certain instances, offer evidence that an exculpatory statement is false as circumstantial evidence of guilt. *People v Dandron*, 70 Mich App 439, 442; 245 NW2d 782 (1976). Substantive use of "proved-to-be false exculpatory statements" is not a novel idea in this state:

> Defendant has no claim to be protected against the exposure of this falsehood where he indulges in it for his own exculpation. He runs the risk of this exposure when he invents a false defense.
>
> *     *     *
>
> ... Thus, it may be shown that he made false statements for the purpose of misleading or warding off suspicion; though these are by no means conclusive of guilt, they may strengthen the inferences arising from other facts. [*People v Arnold*, 43 Mich 303, 304-305; 5 NW 385 (1880).]

"[T]he *Dandron* [*supra*] holding is even more applicable to prior false testimony than to false statements made to police." *People v Wackerle*, 156 Mich App 717, 721; 402 NW2d 81 (1986). "If a prosecutor may use a defendant's 'proved-to-be false exculpatory statements' as evidence of guilt, then it follows that the prosecutor must be afforded the opportunity to establish the falsity of defendant's statements." *Id.* at 722.

While the majority of cases discussing the use of a defendant's prior statements concern statements provided to the police or at another trial, in this case defendant was under oath, was advised that he could have counsel present, and was advised of his Fifth Amendment privilege before he provided statements in an effort to exculpate himself. He was afforded essentially the same protections as defendants in the relevant caselaw. Because defendant elected to make an alleged exculpatory statement to the police, the prosecutor had to be afforded the opportunity to establish the falsity of his statements. *Wackerle, supra.*

Defendant also asserts that his testimony pursuant to the investigative subpoena was involuntary and that its use against him for any purpose violated his right against compelled self-incrimination. We disagree.

It is well established that a defendant's testimony in a former unrelated proceeding is admissible as substantive evidence, absent an indication that the prior testimony was given under compulsion. *People v Ewing*, 99 Mich App 110, 114; 297 NW2d 628 (1980). This result is consistent with the evidentiary rule that statements or admissions by an accused, either before or after the commission of a crime or before or after his arrest, are admissible if they are voluntary. *People v Plato*, 114 Mich App 126, 134-135; 318 NW2d 486 (1981).

MCL 767A.5 provides, in part:

(1) A person properly served with an investigative subpoena under this chapter shall appear before the prosecuting attorney and answer questions concerning the felony being investigated or produce any records, documents, or physical evidence he or she is required to produce.

(2) The prosecuting attorney may administer oaths and affirmations in the manner prescribed by law to implement this chapter.

(3) Any person may have legal counsel present in the room in which the inquiry is held. The person may discuss fully with his or her legal counsel any matter relating to the person's part in the inquiry without being subject to citation for contempt.

(4) The prosecuting attorney may require a person having knowledge of any records, documents, or physical evidence subpoenaed under this chapter to testify under oath or acknowledgment with respect to those records, documents, or physical evidence.

(5) The prosecuting attorney shall inform the person of his or her constitutional rights regarding compulsory self-incrimination before asking any questions under an investigative subpoena. This subsection does not apply if the person is granted immunity under section 7.

(6) If a criminal charge is filed by the prosecuting attorney based upon information obtained pursuant to this chapter, upon the defendant's motion made not later than 21 days after the defendant is arraigned on the charge, the trial judge shall direct the prosecuting attorney to furnish to the defendant the testimony the defendant gave regarding the crime with which he or she is charged and may direct the prosecuting attorney to furnish to the defendant the testimony any witness who will testify at the trial gave the prosecuting attorney pursuant to this chapter regarding that crime except those portions that are irrelevant or immaterial, or that are excluded for other good cause shown.

There is no argument that defendant, before providing testimony pursuant to the subpoena, was not in-

formed that he may have counsel present or informed of his constitutional rights regarding compelled self-incrimination. While defendant contends that his testimony was forced and involuntary, there were options available to him if he did not want to provide testimony. MCL 767A.6 provides, in part:

(1) If a person files an objection to, or fails or refuses to answer any question or to produce any record, document, or physical evidence set forth in an investigative subpoena, the prosecuting attorney may file a motion with the judge who authorized the prosecuting attorney to issue the subpoena for an order compelling the person to comply with that subpoena. The prosecuting attorney shall serve notice of the motion under applicable court rules.

(2) If the prosecuting attorney files a motion with the court for an order under subsection (1), the court shall hold a hearing on the motion. The person has the right to appear and be heard regarding the motion and to have legal counsel present.

(3) If the court determines the question or evidentiary request of the prosecuting attorney is appropriate and within the scope of the authorization, the court shall order the person to answer the question or to produce the record, document, or physical evidence.

(4) If the court determines the question or request is inappropriate or outside the scope of the authorization, the court may order the prosecuting attorney to modify the question or the request or may disallow the question or the request.

(5) The court shall not compel the person to answer a question or produce any record, document, or physical evidence if answering that question or producing that record, document, or physical evidence would violate a statutory privilege or a constitutional right.

The fact that defendant did not take advantage of his opportunity to have the trial court determine whether

he was required to respond to the investigative subpoena does not make his testimony forced.

With respect to the Fifth Amendment, the privilege against compelled self-incrimination can be asserted in any proceeding and it protects against any disclosures that a witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used (i.e., that which would furnish a link in the chain of evidence needed to prosecute the claimant of the privilege). *Hoffman v United States*, 341 US 479, 486; 71 S Ct 814; 95 L Ed 1118 (1951); *United States v Hubbell*, 530 US 27, 38; 120 S Ct 2037; 147 L Ed 2d 24 (2000). As pointed out by defendant, immunity from use and derivative use of compelled testimony is coextensive with the scope of the privilege against self-incrimination:

> The [Fifth Amendment] privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being "forced to give testimony leading to the infliction of 'penalties affixed to . . . criminal acts.'" Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness. [*Kastigar v United States*, 406 US 441, 453; 92 S Ct 1653; 32 L Ed 2d 212 (1972).]

As indicated above, however, defendant's testimony was not "forced." Second, defendant denied any knowledge of or participation in the murder, any handling of guns, and any involvement with drugs. Defendant's testimony, then, was not incriminating. Nor did it lead to the disclosure of incriminating evidence. Detective Boillat testified about contact he had with defendant

that involved guns and drugs around the time of the murder. At the time of defendant's testimony, the police had already spoken to two witnesses, including defendant's accomplice in the murder, Harold Hayes, and both disclosed that defendant was involved in the murder. By the time the police had taken testimony from defendant, they already had significant evidence against him and his testimony provided no link in the chain of evidence necessary to prosecute him. Given all these, defendant has failed to demonstrate that his investigative subpoena testimony led to the infliction of "penalties affixed to criminal acts" and thus violated his Fifth Amendment privilege.

Likewise, while defendant is correct that involuntary confessions (which are of questionable trustworthiness) are not a proper foundation for impeachment (See *People v Reed*, 393 Mich 342, 355-356; 224 NW2d 867 [1975]), because defendant did not confess or incriminate himself in any way, his reliance on cases involving involuntary confessions is misplaced.

In any event, in light of the other evidence presented, including accomplice testimony placing defendant at the murder scene with a gun in his hand, and police testimony concerning contacts with defendant involving guns and drugs, any error in the admission of the testimony would have been harmless. Defendant's investigative subpoena testimony was inconsequential to the ultimate resolution of the case.

Defendant next argues that improper evidence of his character was admitted, through his investigative subpoena testimony, in violation of MRE 404(b). We review a trial court's decision to admit evidence for abuse of discretion. *McDaniel, supra.*

MRE 404(b)(1) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show action in conformity therewith." The admission of defendant's investigative subpoena testimony does not constitute an admission of other "bad acts" evidence. Because his testimony was exculpatory, what was admitted was defendant's *denial* of engaging in other bad acts. The application of MRE 404(b) to defendant's testimony is questionable.

The admission of defendant's testimony did lead to testimony by the police of other contacts with defendant when he had a gun and had drugs on his person. To the extent defendant is objecting to the admission of this testimony, we disagree that it violated MRE 404(b).

As previously indicated, the prosecutor used defendant's testimony to establish that he lied to the police about whether he used drugs or handled guns thus reflecting a consciousness of guilt according to the prosecution. It does not appear that the evidence refuting his denials was offered to show action in conformity therewith. Evidence of other acts may be admitted to show proof of motive, opportunity, or intent. MRE 404(b). The prosecutor's theory of the case was essentially that defendant and his accomplices went to the home of a known drug dealer, believing him to be gone, with the intent of stealing whatever drugs and money the dealer had at the home. That defendant had previously bought or used drugs and had previously handled guns could be used to demonstrate motive and opportunity.

Defendant next asserts that his conviction of first-degree felony murder must be vacated and that a conviction for second-degree murder must be entered because the statute of limitations applicable to the felony or felonies serving as the basis for the first-degree felony-murder conviction have expired. We disagree.

Under MCL 750.316:

> (1) A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:

> \* \* \*

> (b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind . . . .

The elements of first-degree (felony) murder are

> (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316 . . . . [*People v Hutner*, 209 Mich App 280, 282-283; 530 NW2d 174 (1995).]

An indictment for murder may be brought at any time. MCL 767.24(1). Indictments for second-degree home invasion and larceny (or their attempt), however, must be brought within six years. MCL 767.24(5).

As noted by defendant, the murder (and its underlying felonies) occurred in 1996 and defendant was not charged with first-degree murder until 2007. Clearly the statutory period of limitations in which to charge defendant with either larceny or second-degree home invasion had expired at the time charges were brought. Although couched in terms of a due process violation (of which there is none; defendant having not been charged with or convicted of either of the above felonies), defendant's actual arguments appear to be that (1)

conviction for felony murder requires an actual conviction of the underlying felony, and (2) a statutory bar to prosecution of the underlying felony also bars a felony-murder conviction. Defendant, however, cites no authority for his apparent propositions, and we have found no binding authority that squarely addresses his concerns. Defendant's statute of limitations argument appears to present a question of first impression in Michigan.[1]

Other jurisdictions have addressed the very issue presented to this Court and have found that the expiration of the statutory period of limitations for a predicate felony does not serve as a bar to a conviction for first-degree felony murder. We find their analyses sound.

Georgia has a first-degree felony murder statute similar to Michigan's. Under Ga Code Ann §16-5-1(c), the offense of murder can be committed either with malice aforethought or while "in the commission of a felony" and there is no applicable statute of limitations for the offense of murder. *Wooten v State*, 262 Ga 876, 880; 426 SE2d 852 (1993). In *State v Jones*, 274 Ga 287; 553 SE2d 612 (2001), the defendant was charged with felony murder, malice murder, conspiracy to commit robbery, aggravated battery, and concealing the death of another. The conspiracy and aggravated battery served

---

[1] In *People v Gibson*, 115 Mich App 622, 627; 321 NW2d 749 (1982), a panel of this Court stated, "In this case, there can be no conviction of the greater crime, felony murder, without conviction of the lesser crime, assault with intent to commit armed robbery. Therefore, the dual convictions violate double jeopardy considerations. [*People v Wilder*, 411 Mich 328; 308 NW2d 112(1982)]." However, this case is not binding, because of its publication date, and the statement was made in the context of a double jeopardy argument, as the defendant had actually been charged with and convicted of the underlying felony of assault with intent to commit armed robbery. That is not the factual situation before this Court.

as the predicate felonies for purposes of the first-degree murder charge. The alleged crimes occurred 14 years before the indictment. The defendant filed a demurrer and plea in bar on the basis of the expiration of the statutory period of limitations, and the trial court sustained the demurrer and plea in bar with respect to every count except malice murder, stating that the statutory period of limitations for prosecution for the felonies of conspiracy to commit robbery and aggravated battery had expired and that, because the state could not prosecute the felony, it could not prosecute the felony murder.

The Georgia Court of Appeals reversed. It noted that "[f]oreign jurisdictions which have considered the issue before us have uniformly held that 'the running of the statute of limitations on the underlying felony is irrelevant to a prosecution for felony murder.' " *Id.* The Georgia court opined that accepting defendant's argument would effectively impose a time limit on every felony-murder case, in direct contravention of legislative intent.

The *Jones* court also noted that other jurisdictions, in addressing this issue, rely on the wording of their felony-murder statutes, which, like Georgia's, do " 'not require that the defendant be charged and convicted of the underlying felony. The jury must simply find that the defendant committed or attempted to commit it.' " *Id.* at 288 (citations omitted). The *Jones* court stated:

> Contrary to the trial court's analysis, a felony murder conviction is not dependent upon the successful prosecution of the underlying felony. "The mere preclusion of the state's capacity to prosecute the subordinate crime because of a time limitation has no effect upon the question of whether such crime was committed." "The crime of murder is independent of the underlying felony. Therefore, the underlying felony need not be charged as a separate

substantive offense, and the fact that it is time-barred does not preclude a prosecution for felony murder." . . . We therefore conclude that the expiration of the limitations period for the underlying felony does not preclude a prosecution for felony murder. [*Id.* (citations omitted).]

Illinois courts have reached the same conclusion, noting that "proof that the underlying felony occurred is not used to establish that felony *per se*; rather, it is used to establish the requisite substitute criminal intent for felony murder." *People v Wilson*, 348 Ill App 3d 360, 364; 283 Ill Dec 881; 808 NE2d 1169 (2004). In *People v Holt*, 91 Ill 2d 480, 485; 64 Ill Dec 550; 440 NE2d 102 (1982), the Illinois Supreme Court, discussed the significance of the underlying felony:

[T]he felony in felony murder is essential in the sense that if there were no felony the defendant could not do anything in the course of it, but the felony is only a precondition, not an element of independent significance. The real element of felony murder is not so much the felony itself as the special status a felon has from moment to moment while committing the felony.

According to both *Wilson* and *Holt* a conviction on the underlying felony is not an element of felony murder, and the statute of limitations applicable to the underlying felony is irrelevant to the charge and conviction of felony murder.

Other states have likewise held that the expiration of the statutory period of limitations on an underlying felony does not preclude a finding of guilt for first-degree felony murder. For example, see *State v Dennison*, 115 Wash 2d 609, 625-626; 801 P2d 193 (1990) (holding that a conviction on the underlying felony is not a jurisdictional prerequisite to prosecution for felony murder); *State v Lacy*, 187 Ariz 340, 350; 929 P2d 1288 (1996) ("Even if the statute of limitations has

expired on the predicate offense, a defendant may still be prosecuted for felony murder."); *Jackson v State*, 513 So 2d 1093, 1095 (Fla App, 1987) (conviction of the underlying felony is not a jurisdictional prerequisite to prosecution for felony murder); *State v White*, 239 Neb 554; 477 NW2d 24 (1991) (a defendant need not be charged and convicted of an underlying felony in order to be convicted of first-degree murder); *Commonwealth v Munchinski*, 401 Pa Super 300; 585 A2d 471 (1990) (Whether or not the statute of limitations has run on the underlying felony is immaterial, so long as the essential elements of second-degree murder are proven beyond a reasonable doubt.).

We adopt the holdings of the other jurisdictions. Michigan's felony-murder statute requires only proof that the murder occurred during the commission of a specified felony. There is no additional requirement that the defendant be *charged and convicted of* the underlying felony. We are required to read and apply unambiguous statutes as written. *Gebhardt v O'Rourke*, 444 Mich 535, 541-542; 510 NW2d 900 (1994). If we were to adopt defendant's position, we would effectively impose a time limit on every felony-murder case, in direct contravention of legislative intent.

Additionally, the crime of murder is independent of the underlying felony. It is true that at the time this case was tried, double jeopardy prevented a defendant from being convicted of both felony murder and the underlying felony. See *People v Wilder*, 411 Mich 328, 342; 308 NW2d 112 (1981). In *People v Ream*, 481 Mich 223, 225-226; 750 NW2d 536 (2008), however, the Supreme Court overruled *Wilder* and held that dual convictions for both felony murder and the underlying felony do not violate double jeopardy protections. The decision in *Ream* reinforces that felony murder and the

underlying felony are separate offenses. The state's inability to prosecute the predicate crime because of a time limitation has no effect on the question whether the predicate crime was actually committed.

Defendant next contends that he was denied the effective assistance of counsel. The determination whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo. *Id.* However, where, as here, there was no evidentiary hearing on the matter below, our review is limited to errors apparent on the record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002).

Generally, to establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

Defendant's claim of ineffective assistance of counsel rests on counsel's failure to object to the admission of defendant's investigative subpoena testimony and to counsel's failure to object to the charge of first-degree felony murder, for the reasons already addressed. With respect to the admission of the investigative subpoena

testimony, at a pretrial motion, counsel for defendant's codefendant indicated that using the testimony against *either* defendant was an improper attempt to impeach a prior sworn statement by extrinsic evidence. Even though defendant's counsel did not make this objection, an argument was made on behalf of defendant concerning use of the testimony. Because his codefendant's counsel had made the argument on behalf of both defendants, it would have been redundant for defendant's counsel to make the argument. With each counsel being present at the hearing, there was an implicit joinder by defense counsel in the argument made by counsel for codefendant. Counsel was not ineffective for failing to parrot codefendant's counsel.

In considering defendant's argument that counsel was ineffective for failing to object to the first-degree murder charge having been brought on a predicate felony whose limitations period had expired, we would note that at the time of trial there was no binding authority to support defendant's argument. With this Court's resolution of the issue contrary to defendant's position and the fact that there was no prior established caselaw on which to base an objection, counsel cannot be said to have been ineffective for failing to object.

Finally, defendant Nicholas Seals contends he is entitled to a correction of his jail credit. We agree.

MCL 769.11b provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

A defendant is entitled to credit for time served before sentencing pursuant to the above statute even if

the defendant is sentenced to serve a mandatory term of life imprisonment without parole. *People v Dittis*, 157 Mich App 38, 42; 403 NW2d 94 (1987).

In the instant matter, the record reflects that this defendant was arrested on January 10, 2007, and remained incarcerated, without bond, until his sentencing on November 13, 2007. The trial judge did state, at the time of sentencing, that defendant was entitled to 307 days of jail credit on his sentence. The judgment of sentence, however, only indicates that defendant was sentenced to life imprisonment without the possibility of parole and gave him no credit for the jail time he had served between his arrest and sentencing. As conceded by the prosecution, the discrepancy between the trial court's statement at sentencing and the sentence reflected on the judgment of sentence appears to be a clerical error.

We remand Docket No. 282215 to the trial court for the purpose of correcting the judgment of sentence, consistent with the above. We affirm in all other respects. We do not retain jurisdiction.

DOCKET NO. 282216

On appeal, defendant Lewis Seals first contends that he was denied the effective assistance of counsel. We disagree.

As previously indicated, to establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable. *Odom*, 276 Mich App at 415. Where, as here, there has been no evidentiary hearing on the issue

below (defendant's motion to remand was denied by this Court), our review is limited to errors apparent on the record. *Rodriguez*, 251 Mich App at 38.

Defendant asserts that counsel was ineffective for failing to call any witnesses on his behalf. He attaches affidavits of witnesses (admittedly not a part of the formal record) that would provide an alibi. For example, an affidavit from Yvonda Seals, defendant's sister, states that she and defendant visited family from November 3, 1996, to November 14 or 15, 1996, in Bay City, Michigan. Yvonda swears that she advised defense counsel of this fact and offered to provide him with one of the pictures taken while defendant was with her in Bay City.

MCL 768.20(1) provides:

> If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense.

If the defendant fails to file and serve the above written notice, the trial court is required to exclude evidence offered by the defendant for the purpose of establishing an alibi. MCL 768.21. Because defense counsel did not file the requisite notice of alibi with respect to any of defendant's proposed witnesses, defense counsel was precluded from calling them to testify.

There is nothing in the lower court record to suggest that the witnesses could have provided defendant with an alibi. Although defendant attaches to his appellate brief the affidavits of his sister, children's mother, and

another male relative, the affidavits are not a part of the lower court record and, therefore, cannot be considered. *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997). Given that there was no evidentiary hearing on the matter and nothing in the record concerning what the witnesses' testimony might have been, there are no mistakes apparent on the record with respect to counsel's failure to call defendant's proposed alibi witnesses. Moreover, the failure to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court does not substitute its judgment for that of counsel in matters of trial strategy. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999).

One might conclude that the absence of a record regarding these alleged alibi witnesses and the above statements would lead this Court to remand to permit the trial court to conduct an evidentiary hearing. However, even if we were to conclude that counsel's performance fell below an objective standard of reasonableness, there was significant eyewitness testimony at trial from an accomplice with respect to defendant's involvement in the murder, as well as testimony from an undercover officer concerning a conversation between this defendant and his codefendant about the alleged lack of evidence in the case. Given this testimony, we cannot say there is a reasonable probability that, but for counsel's errors, the result would have been different.

Defendant next contends that the prosecutor engaged in misconduct by improperly vouching for, or bolstering the testimony of, law enforcement officers, thus depriving defendant of a fair trial. We disagree.

Defendant did not object to any of the instances of alleged misconduct at trial and did not preserve his issues for appeal. *People v Schutte*, 240 Mich App 713,

720; 613 NW2d 370 (2000). Therefore, our review is for outcome-determinative, plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Under the plain error rule, reversal is warranted only when the plain error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Carines*, 460 Mich at 764-767.

To determine if a prosecutor's comments were improper, we evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements. *Unger*, 278 Mich App at 235.

Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness. *Id.* at 276. "[H]owever, the prosecutor may argue from the facts that a witness should be believed." *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005).

Defendant first directs us to the prosecutor's opening statement, in which she stated (in reference to the cold case team), "[T]hey do their job. This is an old case. They don't rush to judgment." Reviewing the statement in context, we do not find that it amounted to improper vouching, nor was it an attempt to bolster the witnesses' testimony. The statement was made after the prosecutor detailed that information on this 1996 mur-

der came many years later from Kengie Gates, a inmate in federal prison. The prosecutor then detailed that Gates's information led them to Harold Hayes, who was also currently in prison on unrelated charges, and that they met with the police on several occasions, changing their stories. It was then that the prosecutor stated:

> 11-9-04, I have here Cold case test information. What they do is they don't then come in and ask for a warrant. The evidence will not be based on Kengie Gates and Harold Hayes, they come to the Prosecutor's Office and say, you know, "Give me a felony murder warrant for these guys." No, they do their job. This is an old case. They don't rush to judgments. They want to see if these people are being truthful, so they go out and they do things like this.

Clearly, the prosecutor was acknowledging that some of her witnesses' testimony, particularly that of convicted felons who provided police with several different versions of the events, may appear untrustworthy. But she went on to state that the police did not base the case against defendant solely on these witnesses' statements. The prosecutor was merely indicating that the police did not simply take a convicted felon's statements against defendants to pursue the case against defendants, but conducted further investigation as well. This statement, in context, is not improper vouching but, rather, an indication of the steps the police took in investigating the case.

Defendant also asserts that the prosecutor continued to imply greater credibility on the part of the law enforcement witnesses and, by extension, Harold Hayes and Kengie Gates during her closing argument:

> Well we know Harold's lied in the past. I mean, that's why these guys don't rush to judgment. They spend two years doing continued investigation. They confront these guys and give them several opportunities to say, wait, wait,

wait, wait. You know. What are you talking about. . . . These guys do not rush to judgment in this case. They take their time because they know what they're dealing with. And you know what you're dealing with . . . you're dealing with a guy like Harold Hayes that kick starts the investigation after Kengie Gates, right? So, am I asking you to rely on Harold Hayes for some of the evidence? I am. But you know that's not all you have. If it was, I would never be here. We would never have brought this case to you. Because there is no benefit to us, law enforcement, Prosecutor's Office, any of us, to bring a case to you if we're not sure we got the guys. . . . But how do we benefit if . . . we purposely, you know, mislead you, hide evidence, twist stuff, to conform to our little case. Who here is benefiting from that? Then we let the real guys go.

The prosecutor's comment that the police did not rush to judgment and took their time, again, simply conveys that the police did not rely exclusively on the statement of a convicted felon who had previously lied to them in requesting that charges be brought against defendants. The comment can be viewed as summarizing certain evidence at trial while downplaying a potential weakness in the prosecution's case (that one of the key witnesses was an accomplice in the crime, had lied to the police several times, was in prison for unrelated crimes, and may get a plea deal concerning the instant murder in exchange for his testimony).

The remaining comments are more troublesome. The prosecution's statement, that neither she nor the police would receive a benefit from bringing a case unless they are sure they have the right guys, appears to express her personal belief in defendants' guilt, which our Courts have held is improper. See, e.g., *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). The comment could also be viewed as the prosecutor's emphasis on the fact that because the prosecutor's role and responsibility is to seek justice and not merely

convict (see, e.g., *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 [2007]), there would be no benefit to the prosecutor to convict an innocent person, or the comment could be viewed as a response to defense counsel's pointed attempts to discredit witnesses over previous lies about the offense. However, regardless of the prosecutor's intention, these comments do not refer to and are not based upon the evidence, but merely imply that she, the police, and the prosecution witnesses were to be believed.

While the comments were improper, a new trial is not warranted because the comments were not outcome-determinative. First, the trial court instructed the jurors that the lawyer's statements and arguments were not evidence, but were only meant to help them decide each side's legal theories. Second, there was strong, direct evidence from defendant's accomplice concerning this defendant's role as the shooter in the murder. We decline to reverse a conviction where isolated, improper remarks did not cause a miscarriage of justice. See MCL 769.26.

We affirm in all respects with regard to Docket No. 282216.

In Docket No. 282215, we remand to the trial court for the purpose of correcting the judgment of sentence consistently with this Court's directive. We affirm the conviction of defendant Nicholas Seals in all other respects, and we do not retain jurisdiction.