*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 9, 2023

Plaintiff-Appellee,

v

No. 350855
Macomb Circuit Court

RANDELL FREDRICK KALLAPURE,

LC No. 2018-004253-FC

Defendant-Appellant.

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of two counts of first-degree criminal sexual conduct (CSC-I) (victim between 13 and 16 and is a member of the same household as defendant), MCL 750.520b(1)(b), one count of second-degree criminal sexual conduct (CSC-II) (victim between 13 and 16 and is a member of the same household as defendant), MCL 750.520c(1)(b), and one count of aggravated indecent exposure, MCL 750.335a(2)(b).[1]  The trial court sentenced defendant to concurrent terms of 15 to 30 years' imprisonment for each CSC-I conviction, 96 to 180 months' imprisonment for CSC-II, and 12 to 24 months' imprisonment for aggravated indecent exposure.  On appeal, defendant argues that he is entitled to a new trial because defense counsel was ineffective for failing to call one of his sons as a witness and for failing to adequately discuss trial strategies with him, which resulted in his testimony undermining defense counsel's trial strategy.  We affirm.

## I.  BACKGROUND FACTS

At trial, there was testimony that ALR's stepfather, defendant, constantly watched pornography and masturbated in the living room, even when ALR was around.  This conduct began two years before defendant started molesting ALR, who was 14 or 15 years old, in the summer of

---

[1] Defendant also was charged with two counts of fourth-degree criminal sexual conduct (CSC-IV) (sexual contact with another by force or coercion), MCL 750.520e(1)(b), but he was acquitted of those charges.

2007. Defendant began coming into ALR's room at night and molesting her. This occurred two or three times a week. Defendant would grab ALR's thighs, stomach, and breasts, and perform cunnilingus and vaginal penetration with one or two fingers. ALR also woke up frequently to defendant masturbating while sitting on her bed. ALR tried locking her door, but defendant utilized a spare key to gain access to her room. Defendant also would masturbate when ALR was learning to drive and defendant was riding in the passenger seat. Defendant told ALR that he could not stop because he was in love with her and could not control it.

ASR, ALR's older sister, also testified that defendant would openly watch pornography in the living room. ASR sometimes saw defendant leave ALR's room and heard him at ALR's door at night, calling ALR's name. This made ASR very uncomfortable. On two occasions, defendant "felt up" ASR's leg. This caused ASR to immediately leave and go to her room.

Defendant's wife, the girls' mother, was expected to receive a large financial settlement as a result of a lawsuit on behalf of her mother when these abuse allegations came to light in 2018. Defendant denied the allegations and testified that he sometimes went upstairs to check on ALR but never went into her room. Defendant said that he never knew that ALR occasionally snuck out of her room until "after the fact" she had done so. He also testified that ALR had been running with a bad crowd and had become "wild." Defendant testified that they never discussed the 2018 financial settlement as a family. During closing argument, defense counsel did not utilize the "wild child" theory or the financial incentive theory as a reason for ALR to fabricate her allegations against defendant.[2] The jury found defendant guilty of both CSC-I charges, CSC-II, and aggravated indecent exposure.

Defendant moved for a new trial, arguing that defense counsel was ineffective for failing to contact his son Junior to testify, and for inadequately preparing defendant for trial which would have helped him avoid undermining defense strategies with his testimony. At the *Ginther*[3] hearing, defense counsel recounted that defendant told him that the son who stayed at the house sporadically did not know anything and that there was no need to talk with him. Defense counsel also stated that his trial strategy was to prove that ALR was lying by showing a motive to lie stemming from her mother's financial settlement and by painting ALR as a "wild child." Defendant admitted that he mentioned his wife's settlement after defense counsel asked him why the girls might lie. Defendant did not recall if defense counsel told him that defense counsel planned to use the financial incentive theory, but recalled that he was not surprised when he heard the argument at trial.

The trial court held that defense counsel was not ineffective for failing to call Junior as a witness because there was no evidence defendant wanted Junior to testify, and because Junior

---

[2] During his opening statement, defense counsel asserted that the reason that defendant went to ALR's room at night was to check on her because she had been sneaking out at night. Further, as explained below, one of defense counsel's other strategies in this case was to imply that ALR lied about the allegations because she did not want defendant to benefit from the financial settlement.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

moved out in 2006, a year before the sexual abuse began, as testified to by ALR.[4]  The trial court also held that defense counsel was not ineffective for advancing the financial incentive theory and "wild child" theory at trial.  The trial court ruled that defense counsel's decisions on these matters were the result of sound trial strategies.

## II.  DISCUSSION

Defendant argues that the trial court erred by denying his motion for a new trial because defense counsel was ineffective.  We disagree.

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 351665 and 354834); slip op at 5 (quotation marks and citation omitted).  "All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*. (quotation marks and citation omitted).  Clear error exists where the reviewing court is left with a definite and firm conviction that the lower court made a mistake. *Id*.

A criminal defendant has the right to a fair trial, which includes the right to effective assistance of counsel. *Id*.  "Trial counsel is ineffective when counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. (quotation marks and citation omitted).  "Trial counsel's performance is presumed to be effective, and defendant has the heavy burden of proving otherwise." *Id*.  The defendant must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).  "If counsel's strategy is reasonable, then his or her performance was not deficient." *Isrow*, ___ Mich App at ___; slip op at 5 (quotation marks and citation omitted).  When evaluating an ineffective assistance of counsel claim, "[t]here is a strong presumption that trial counsel's decision-making is the result of sound trial strategy." *Id*.  "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Id*.

Defendant contends that the trial court committed two errors when it denied his motion for a new trial.  Defendant first contends that the trial court erred by characterizing defense counsel's decision not to call Junior as a valid trial strategy.  "[T]he failure to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court does not substitute its judgment for that of counsel in matters of trial strategy." *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009).  A trial court must determine "whether the strategic choices [were] made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular

---

[4] The trial court also found that the fact that Junior did not see defendant watching pornography and masturbating from the balcony at night was not strong enough evidence to negate ALR's testimony that she observed these things happening while she was downstairs getting snacks in the kitchen or sitting on a couch in the same room.

investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citations omitted).

Defense counsel did not "investigate" what Junior's testimony would have been because he never interviewed Junior. So, the question becomes whether it was reasonable for defense counsel not to interview Junior. Defense counsel testified that he did not interview Junior because defendant told defense counsel that, although Junior stayed at the house sporadically, there was no need to talk with Junior because he did not know anything. While defendant argued in his supplemental brief filed after the *Ginther* hearing that defense counsel knew Junior would make a good witness, the extent of defendant's claims in his earlier affidavit merely alleged that defense counsel knew that defendant's sons were present for some of the relevant time period. Defendant's testimony at the *Ginther* hearing did not contradict defense counsel's testimony that defendant told him Junior did not know much and that there was no need to talk with Junior.

The trial court's findings were consistent with the testimony offered at the *Ginther* hearing. The trial court found that there was no evidence that defendant wanted Junior to testify. The trial court also found that there was evidence that defendant told defense counsel that Junior left home before the abuse began. The record does not support the conclusion that the trial court clearly erred when it made these factual findings. Defendant did not contest defense counsel's testimony that defendant told defense counsel Junior did not know anything, and that defense counsel did not need to talk to Junior. Defendant merely argued that defense counsel was aware Junior could have provided relevant testimony.

Having found no clear error in this regard, we review de novo the trial court's conclusion that defense counsel's conduct did not amount to ineffective assistance of counsel. *Isrow*, ___ Mich App at ___; slip op at 5. Based on defendant's representations before trial that Junior did not know anything and that defense counsel did not need to contact him, defense counsel chose not to pursue Junior as a witness. Defense counsel also decided not to pursue defendant's wife as a witness after defendant represented to defense counsel that she also would not have any relevant information. Defendant did not question defense counsel for failing to interview his wife after defendant represented that she did not know anything. Likewise, defendant has no reasonable ground to question defense counsel for not contacting Junior after telling defense counsel that Junior did not know anything. Deciding not to contact a witness defendant said had no relevant knowledge was a reasonable decision.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. . . . And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. [*Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

The record does not provide enough evidence for defendant to overcome the "strong presumption" that defense counsel's decision not to investigate or call Junior to testify was a sound

trial strategy. Defense counsel made a strategic choice not to waste time and resources investigating Junior's potential testimony after defendant represented that Junior would not know anything. See *Trakhtenberg*, 493 Mich at 52 (holding that counsel has a responsibility to make reasonable investigations.) Therefore, the trial court did not err when it concluded that defense counsel's decision to forego investigating or calling Junior as a witness did not constitute deficient performance.

Alternatively, even if this Court were to conclude that defense counsel's decision not to investigate or call Junior constituted deficient performance, that performance did not prejudice defendant. "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Isrow*, ___ Mich App at ___; slip op at 5. First, Junior's testimony was only indirectly relevant at best. ALR testified that the sexual abuse began during the summer of 2007. Junior left home around the summer of 2006. Accordingly, Junior's testimony would not be directly relevant for the CSC claims. Nor would his testimony be directly relevant for the aggravated indecent exposure claim because that concerned 2013 through 2018. Junior would only be able to comment about events that happened outside of the timeline of this case, which would at best be only marginally and indirectly relevant. Even then, Junior only said that he would walk across the hallway upstairs at night where he could see defendant in the living room from upstairs. In contrast, ALR testified that defendant would watch pornography and masturbate in the living room while ALR was present. ALR also testified that defendant would sometimes masturbate in her room at night. ASR corroborated ALR's testimony that defendant watched pornography in the living room at night. Therefore, defendant has failed to show a reasonable probability that Junior's testimony would have changed the outcome of his trial.

Second, defendant contends that defense counsel's performance was deficient because he did not adequately discuss the trial strategies with defendant and prepare defendant's testimony accordingly. Again, defendant must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced . . . defendant." *Randolph*, 502 Mich at 9. Defense counsel testified that defendant told defense counsel about the financial settlement and ALR's "wild child" tendencies in response to defense counsel asking defendant if the girls had a motive to lie. The trial court found that there was no dispute as to this fact. Defendant agreed that he mentioned the settlement when defense counsel asked him why the girls might lie and that he was not surprised when he heard defense counsel make the financial incentive argument at trial. Defense counsel also testified that he discussed these strategies with defendant. Defense counsel and defendant did not discuss any other strategies.

At trial, defense counsel proffered the financial incentive theory and the "wild child" theory based on what defendant told defense counsel. Because defendant provided these theories to defense counsel in response to defense counsel inquiring why the girls might lie, it was reasonable for defense counsel to assume that defendant's own testimony was not going to counter the theories he supplied to defense counsel.[5] Defense counsel also explained that he did not like to rehearse

---

[5] The trial court reached the same conclusion. It explained that "[a]lthough [defense counsel] did not specifically ask, and [defendant] did not volunteer, whether the victim knew about the

testimony because that could make it sound unauthentic at trial. Therefore, deciding not to rehearse the testimony, so defendant's testimony appeared authentic and credible, was reasonable. Finally, these were the only defenses defendant potentially had. There was nothing else on the record which explained why the girls would have fabricated their testimony. Consequently, defendant's arguments fall short of overcoming the strong presumption that defense counsel's decisions were the product of sound trial strategy.

Further, even if this Court were to conclude that defense counsel's performance was deficient because he did not adequately discuss trial strategies with defendant or prepare defendant to testify, defendant cannot show that there was a reasonable probability that the outcome would have been different but for the deficient performance. There was no evidence of a different motivation for the girls to have lied. Therefore, had defense counsel abandoned his defense theories, he would have been left without a theory for why the girls lied. Alternatively, had defense counsel prepared defendant more before trial, there is a possibility that defendant's testimony would have sounded rehearsed and less credible to the jury.

It is important to note that defendant's testimony at trial did not directly contradict defense counsel's trial theories. Defendant said that the family did not discuss the financial settlement in his presence, but he did not testify that the girls were unaware of the settlement. Additionally, defendant testified that he went upstairs, but that he never knew ALR snuck out until "after the fact." This statement was ambiguous. Although it could mean that defendant did not know ALR snuck out of the house during the time she was habitually doing so, it could also mean that he never discovered she was gone until after she returned. This alternative explanation would be in harmony with the "wild child" theory. Moreover, even if defendant did not go to check on ALR because he was unaware of her sneaking out at the time, painting her as a "wild child" could help the jury picture her as the type of person who might fabricate testimony for financial gain. In summary, none of defendant's statements directly contradicted defense counsel's trial strategies.[6] Therefore, even if defense counsel's performance was deficient, defendant has failed to show a reasonable probability that the result of his trial would have been different but for defense counsel's performance.

III. CONCLUSION

---

settlement, it would be reasonable to infer that if this fact is discussed as a possible motivation for the victim to lie, [defendant] would be presenting the information based on the victims presumed knowledge."

[6] While it is true that defense counsel did not mention these two theories in closing argument, the reason for the omission was not apparent. Without more, the presumption is that defense counsel's decisions were the products of sound trial strategy. See *Isrow*, ___ Mich App at ___; slip op at 5 (explaining that there is a "strong presumption that trial counsel's decision-making is the result of sound trial strategy").

Defendant fails to show that he was denied the effective assistance of counsel or that he was prejudiced by counsel's alleged mistakes. Therefore, the trial court did not err by denying his motion for a new trial, and we affirm.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan