# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CARLOQUE FERRARI-LA-TO LANNING,

Defendant-Appellant.

UNPUBLISHED
October 13, 2015

No. 322362
Livingston Circuit Court
LC No. 13-021211-FC

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of five counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(b)(*i*) (penetration with a 13-year-old victim of the same household), and one count of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(b)(*i*) (sexual contact with a 13-year-old victim of the same household). The trial court sentenced him as a habitual fourth offender, MCL 769.12, to 40 to 80 years' imprisonment for the CSC I convictions and 40 to 80 years' imprisonment for the CSC II conviction. We affirm defendant's conviction, and remand for further proceedings pursuant to *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, issued July 29, 2015).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The complainant went to stay with her father in May 2012 when she was 13 years old. Defendant was staying with the complainant's father at the time. The complainant testified to several instances of sexual abuse perpetrated by defendant, including vaginal and oral penetration. The complainant returned to her mother's home in June 2012. Encouraged by a friend, she disclosed defendant's conduct to her mother in January 2013.

At trial, the complainant testified that defendant began sexually abusing her on the first day she arrived at her father's mobile home. On that occasion, defendant kissed her behind an abandoned trailer in their trailer park. Defendant then pulled down her pants and "penetrated me with his fingers." She stated that she did not tell her father because she was scared. The complainant testified that defendant also digitally penetrated her on more than one occasion while they were in his room in the trailer. She further testified that defendant penetrated her vagina with the tip of his penis, and that her vagina hurt and began to bleed. She also testified that defendant attempted to penetrate her anus, and placed his penis in her mouth until he ejaculated. Finally, she testified that defendant had placed his mouth on her breasts and vagina.

-1-

The complainant confirmed that she had discussed these incidents with a forensic interviewer prior to trial. On cross-examination, the complainant stated that she did not notice any marks on defendant's lower torso.

Defendant testified and admitted to giving the complainant alcohol even though she was underage. He said that the complainant followed him around frequently, that she idolized him, and that he believed the complainant had a crush on him. Defendant denied all sexual contact with complainant. Defendant's wife testified that he had a birthmark on his left leg and a golf-ball sized scar on his right buttock.

Dr. Lisa Markman, an assistant clinical professor of pediatrics at the University of Michigan, testified that the complainant was referred to her clinic in February 2013. Markman testified that the complainant related instances of sexual abuse by defendant. Markman testified that she performed a physical examination of the complainant. She testified that the physical examination was consistent with no sexual contact having occurred, and noted that she did not observe any abnormalities during the genitalia exam. Markman stated that in "most cases we don't actually see any signs of injury especially where there's been a delay in presentation from medical care," as in this case. However, she stated that "based on what [the complainant] described with burning that there likely was some injury at some point in time." Markman testified that testing for sexually transmitted infections came back negative. Plaintiff asked Markman if she had "come up with a final diagnosis with respect to [the complainant]?" and Markman responded, "It was my opinion based on her age appropriate and consistent disclosure, her descriptions of the events that occurred, how her body felt afterwards, that I believe she was a victim of childhood sexual abuse." Defendant did not object to this question and answer. On cross-examination, Markman confirmed that her conclusions were driven by self-reports from the complainant and her mother and that the results of the physical examination were also consistent with no sexual abuse having occurred.

## II. MARKMAN'S TESTIMONY

Defendant argues on appeal that Markman's testimony that the complainant had been a victim of sexual abuse should not have been admitted, that it deprived him of a fair trial, and that counsel was ineffective for failing to object.[1] As there was no objection to Markman's testimony, this issue is unpreserved. *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). We review unpreserved issues for plain error affecting substantial rights, *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999), and review an unpreserved claim of ineffective assistance of counsel only to the extent that defense counsel's mistakes are apparent on the record, *People v McCrady*, 213 Mich App 474, 478-479; 540 NW2d 718 (1995).

---

[1] Defense counsel objected at trial to Markman's testimony regarding statements made to her by the complainant. The prosecution argued that the statements were made for the purposes of medical treatment or diagnosis and were thus admissible under MRE 803(4). After conducting a voir dire of Markman, defense counsel withdrew the objection. Those portions of Markman's testimony are not at issue in this appeal; defendant challenges only Markman's opinion testimony that the complainant had been sexually abused.

Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant. Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the trial proceedings. Defendants bear the burden of persuasion. The failure to establish a plain error that affected a substantial right precludes a reviewing court from acting on such an error. However, even if defendants show plain error that affected a substantial right, reversal is only warranted "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." [*People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006) (citations omitted; alteration in original).]

To determine whether a defendant is prejudiced, this Court must review "the entire record, including both the jury instructions and the evidence." *Carines*, 460 Mich at 772 n 18.

## A. PLAIN ERROR

The admission of Markman's opinion that the complainant was a victim of sexual abuse was plain error. Our Supreme Court in *People v Peterson*, 450 Mich 349; 537 NW2d 857, amended on other grounds 450 Mich 1212 (1995), stated that "an expert may not testify that the sexual abuse occurred" and "may not vouch for the veracity of a victim." *Id*. at 352. Our Supreme Court has applied this rule to physicians who testify to forming a diagnosis of sexual abuse from an examination of the victim, even if the physician was not formally qualified as an expert under MRE 702. See *People v Harris*, 491 Mich 906; 810 NW2d 560 (2012). This rule is especially relevant in sexual abuse cases that, as is frequently the case, are essentially credibility contests between a complainant and the defendant. In such cases, the danger of a physician offering an opinion as to whether sexual abused occurred is that "[t]o a jury recognizing the awesome dilemma of who to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat." *People v Beckley*, 434 Mich 691, 722; 456 NW2d 391 (1990) (Opinion by BRICKLEY, J.)

The instant case was a credibility contest between defendant and complainant. Markman did not find any physical evidence of sexual abuse, and she admitted that her belief that the complainant "was a victim of childhood sexual abuse" was based on what she had been told by the complainant and her mother. Therefore, the challenged testimony was essentially an assessment of the complainant's credibility, which is improper. See *People v Douglas*, 496 Mich 557, 583-588; 852 NW2d 587 (2014); *People v Kowalski*, 492 Mich 106, 126; 821 NW2d 14 (2012); *People v Smith*, 425 Mich 98, 112-113; 387 NW2d 814 (1986).[2]

---

[2] The prosecution argues that Markman's statement was unresponsive to the prosecution's question. The prosecution indeed asked Markman *if* she had formed a final diagnosis of the complainant, not *what* that diagnosis was. However, we are not persuaded by the prosecution's suggestion that asking about a "diagnosis" relates only to "treatment" and not to the underlying

However, having recognized that plain error occurred, we must determine whether the error prejudiced defendant. *Pipes*, 475 Mich at 279. In so doing, we must not merely determine whether the complainant's testimony alone was sufficient to convict defendant, rather, we must determine whether the admission of Markman's testimony prejudiced defendant under the plain error standard. *People v Harris*, 495 Mich 908; 840 NW2d 307 (2013). We conclude in this case that it did not. Although Markman improperly testified regarding her conclusion that the complainant had been sexually abused, she also testified that she could find no physical support for the complainant's claim that her genital areas had burned after defendant's penetration, or other physical signs that abuse occurred; further, she admitted that her diagnosis was based on information provided to her by the complainant and her mother, both of whom testified at trial. Thus, some of her testimony potentially cast doubt on complainant's testimony by highlighting the lack of physical evidence in support of her claim. See *Peterson*, 450 Mich at 377. Further, the prosecution referred to the case, in closing argument, as a "he said she said" and reminded the jury that "we don't have to present anything other than [the complainant's] testimony to establish this case beyond a reasonable doubt." As our Supreme Court noted in *Peterson*, 450 Mich at 378:

> [T]his statement did not result in focusing the jury's attention on the expert testimony that was admitted. The statement [that the case is a credibility contest between the defendant and the complainant] highlights only the testimony of the victim and the defendant and asserts that the resolution of the case centers on which of the two they should believe.

Finally, the trial court instructed the jury that it was free to disbelieve witnesses and they should consider the testimony of witnesses in light of all evidence presented. In light of these factors, as well as the other evidence of defendant's guilt, defendant cannot show that the admission of Markman's testimony, although erroneous, affected the outcome of his trial. *Pipes*, 475 Mich at 279; *Peterson*, 450 Mich at 379 ("There is no purpose in sending this case back through the system for the victim and family to once again relive these tortuous events where the errors are harmless and justice is served.").

---

condition to which the treatment would relate. The prosecution is correct that the "general rule" is that unresponsive testimony from a prosecution witness does not constitute reversible error. See *People v Kelsey*, 303 Mich 715, 717; 7 NW2d 120 (1942). However, even unresponsive testimony may be analyzed for prejudicial effect. See *People v Waclawski*, 286 Mich App 634, 709; 780 NW2d 321 (2009). Further, in light of the specific rule that our Supreme Court has propagated concerning the testimony of experts regarding a diagnosis of child sexual abuse, of which the prosecution was presumably aware, it is at least arguable that the prosecution was aware that its question likely would elicit an improper response. See *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Therefore, our finding of error would not change if Markman's testimony was deemed unresponsive, although as discussed later in this opinion we do not find error requiring reversal.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel's failure to object to Markman's testimony deprived defendant of the effective assistance of counsel. To establish ineffective assistance of counsel, defendant "must show that (1) counsel's performance fell below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). Because plain error occurred, counsel's performance fell below an objective standard of reasonableness. See *Harris*, 491 Mich at 906. However, in light of our analysis above, we conclude that defendant cannot show that the outcome of his trial was affected by the error such that the result would have been different if not for his counsel's performance. *Seals*, 285 Mich App at 17.

We therefore affirm defendant's convictions.

## III. SENTENCING

Defendant further argues that the trial court engaged in judicial fact-finding that increased the floor of the permissible sentence in violation of the Constitution of the United States. Pursuant to our Supreme Court's recent in decision in *Lockridge*, we agree. However, a *Crosby*[3] remand, rather than resentencing, is the appropriate remedy, as discussed below.

In *Lockridge*, the Supreme Court held that in order to avoid any Sixth Amendment violations, Michigan's sentencing guidelines scheme was to be deemed advisory, instead of being mandatory. *Id*. at __ (slip op at 28). The concern is that when a judge makes findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding that increases a defendant's minimum sentence, this runs afoul of a defendant's right to a jury trial. *Id*. at __ (slip op at 1). As a result, the guidelines no longer can be considered mandatory, but sentencing judges must consult the guidelines and " 'take them into account when sentencing.' " *Id*. at __ (slip op at 28), quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

In determining whether there is any plain error under this new scheme, the first inquiry is whether the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at __ (slip op at 32). If the answer is "yes," then a defendant cannot establish any plain error. *Id*. at __ (slip op at 32). If the answer is "no," then a remand to the trial court is required to allow it to determine whether, now aware of the advisory nature of the guidelines, if the court would have imposed a materially different sentence. *Id*. at __ (slip op at 34). If the court determines that it would have imposed a materially different sentence, then it shall order resentencing. *Id*. at __ (slip op at 34).

---

[3] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

In this case, defendant can satisfy the plain error analysis of *Lockridge*. Offense variable 8, MCL 777.38, was scored at 15 points for placing the victim in a situation of greater danger. However, location is not an element in either CSC I or CSC II. Offense variable 10, MCL 777.40, relates to the exploitation of a vulnerable victim. Defendant was assessed 15 points, indicating that predatory conduct was involved. MCL 777.40(1)(a). By definition, predatory conduct "means preoffense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a). Given that the conduct under this variable must have occurred prior to the sentencing offense, it must necessarily have been based on facts not necessary to establish the elements of the offense. If these points were not scored, defendant's sentence would be outside the guidelines recommendation. Therefore, defendant's "guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment" and defendant is entitled to remand procedures. *Lockridge*, ___ Mich at ___; slip op at 32.

"[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to remand to the trial court for further inquiry[,]" i.e., a "*Crosby*" remand. *Lockridge*, slip op at 33. Because defendant's current OV score is not supported by facts necessarily found by the jury or admitted by defendant, we conclude that such a remand is compelled by *Lockridge*. On remand, the trial court should determine whether it would have imposed a "materially different" sentence if it had been aware of the advisory nature of the guidelines. *Id.*, slip op at 34. Our Supreme Court set forth the requirements for a *Crosby* remand as follows:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Id.*, slip op at 35-36.]

Affirmed as to defendant's convictions. Remanded with regard to defendant's sentence. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra

-6-