# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRELL MARCUS ROBERTS,

        Defendant-Appellant.

UNPUBLISHED
December 4, 2018

No. 339424
Ingham Circuit Court
LC No. 16-000384-FC

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant was convicted by a jury of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to serve 48 to 90 months in prison for his felon-in-possession conviction.[2] The trial court also sentenced defendant to serve a mandatory consecutive term of 24 months in prison for his felony-firearm conviction. Defendant appeals by right. We affirm defendant's convictions and sentences.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a shooting that occurred at Secrets Nightclub (Secrets) in downtown Lansing in the early morning hours of May 24, 2015. At approximately 12:30 a.m., a Secrets patron was shot while inside of the nightclub. Defendant was inside Secrets when the shooting occurred, and he, along with other patrons, fled the club. Sergeant Brian Curtis of the Lansing Police Department and several other officers were parked in their patrol vehicles monitoring the club. Sergeant Curtis observed several patrons leave the club "in a panic."

---

[1] Defendant was found not guilty of aiding and abetting assault with intent to commit murder (AWIM), MCL 750.83. He was also originally charged with carrying a concealed weapon, MCL 750.227, but this charge was later dismissed.

[2] The trial court departed upwardly from the minimum sentencing guidelines range of 14 to 36 months.

Shortly after, dispatch informed Sergeant Curtis of the shooting, and he activated the mobile vehicle recording device ("MVR") on the front of his patrol car.

Sergeant Curtis heard gunshots and simultaneously observed two individuals, later identified as defendant and LaDon Jackson, advancing towards a group of people outside the club. Sergeant Curtis later reviewed the MVR video and observed that it was Jackson who fired these shots. The MVR video, which was admitted into evidence and played for the jury at trial, also showed defendant and Jackson make contact with each other. Sergeant Curtis testified at trial that he believed that, during this contact, defendant passed a gun to Jackson, who then fired the shots and returned the gun to defendant.

After Jackson fired the shots, Sergeant Curtis observed both defendant and Jackson run south, and another officer informed Sergeant Curtis that these individuals might be in possession of a firearm. Sergeant Curtis pursued defendant and Jackson in his patrol vehicle and commanded them to stop, but they refused to comply. Jackson executed a "button hook" maneuver[3] to evade police,[4] but defendant continued running south alone. Sergeant Curtis pursued defendant and observed him pass by a red Impala and make certain movements that, in Sergeant Curtis's training and experience, led him to believe that defendant had discarded a firearm in that area. After passing the red Impala, defendant continued along the sidewalk, and he was arrested shortly thereafter. Police found no firearm in either Jackson's or defendant's possession. However, a canine unit trained to detect firearms located a firearm next to the red Impala that defendant had passed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence for a rational jury to conclude that he possessed a firearm. We disagree.

### 1. STANDARD OF REVIEW

A claim of insufficient evidence is reviewed de novo. *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). All "factual conflicts are to be viewed in a light favorable to the prosecution." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). The appellate court must "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential

---

[3] A "button hook" maneuver is essentially a reversal of direction, resembling an upside down J or an old fashioned button hook used to fasten shoes and spats. In this case Jackson turned back heading north, while defendant continued southward.

[4] Officer Ethan Murlick of the Lansing Police Department eventually arrested Jackson. Jackson pleaded guilty to assault with intent to commit great bodily harm less than murder, MCL 750.84(1)(a).

elements of the crime were proven beyond a reasonable doubt." *Id*. Evidence can be circumstantial or it may be drawn from reasonable inferences. *Solmonson*, 261 Mich App at 661. However, inferences may not be based only upon speculation. *People v Lane*, 308 Mich App 38, 59; 862 NW2d 446 (2014).

## 2. DISCUSSION

Possession may be actual or constructive, *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012), and it may be joint or sole, *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). Actual possession occurs "when an individual knowingly has direct physical control over a thing at a given time." *People v Flick*, 487 Mich 1, 15; 790 NW2d 295 (2010) (quotation marks and citation omitted). Constructive possession occurs when "the totality of the circumstances indicates a sufficient nexus between defendant and the contraband." *Minch*, 493 Mich at 91-92 (quotation marks and citation omitted). A person constructively possesses an object if he or she "knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *Id*. at 92 (quotation marks and citation omitted).

In this case, there was evidence to support the conclusion that defendant had possession of the firearm. As the jury was shown the MVR video, Sergeant Curtis testified:

[Y]ou're going to see a transaction what I believed [sic] where LaDon Jackson receives the firearm from the Defendant. LaDon Jackson advances at the crowd, does the shooting, comes back and exchanges the firearm back to the Defendant.

\* \* \*

It is my belief that they're exchanging a firearm right there.

\* \* \*

And here is LaDon Jackson advancing, firing his gun.

\* \* \*

Here [defendant's] reaching into his upper torso.

\* \* \*

And now here he goes right here to the passenger side. I believe he discretely tossed the gun right there.

Sergeant Curtis explained that, in his experience and training, weapons often "change hands" on the streets. He further explained "that people do not hold onto firearms. They trade them off with one another, especially during an event like this." Sergeant Curtis testified that after he heard the gunshots, he observed defendant and Jackson both "run back in a south direction after they advanced on a group to the north." Sergeant Curtis stated that he observed defendant reach "into his upper torso." Although defendant testified that he reached "into his

-3-

torso" to pull out his key fob rather than a firearm, "factual conflicts are to be viewed in a light favorable to the prosecution," *Wolfe*, 440 Mich at 515, and witness credibility determinations are left to the jury, *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Additionally, Sergeant Curtis commanded defendant to stop, but he refused to comply, "continued to evade," and passed "directly near the passenger side of this red Impala," which is where the gun was eventually found. In contrast, Sergeant Curtis testified that Jackson was never in the vicinity of the red Impala. On the basis of the video evidence and Sergeant Curtis's testimony, a rational jury could have found that defendant knowingly had direct physical control over the firearm. See *Flick*, 487 Mich at 15.

### B. OV 9

Defendant next contends that 25 points were erroneously assessed for OV 9 because his alleged brief possession of the firearm, standing alone, did not place anyone in danger. We disagree.

### 1. STANDARD OF REVIEW

A trial court's findings with respect to OV scoring are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). However, because defendant did not preserve his challenge to the scoring of OV 9 by raising it at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed with this Court, MCL 769.34(10), our review is limited to plain error affecting substantial rights, *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

### 2. DISCUSSION

"Offense variable 9 is number of victims." MCL 777.39(1). Twenty-five points are assessed for OV 9 if "[t]here were 10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss . . . " MCL 777.39(1)(b). "[E]ach person who was placed in danger of physical injury or loss of life or property" is to be counted as a victim. MCL 777.39(2)(a). However, "only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered." *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008). Furthermore, "[o]ffense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009).

In the present case, the sentencing offense is felon-in-possession.[5] Defendant's mere "commission of the offense of felon-in-possession, in and of itself, simply did not place anyone

---

[5] Defendant was also convicted of felony-firearm, which is punishable by a mandatory consecutive term of imprisonment and is not subject to the sentencing guidelines. See MCL 750.227b(1); MCL 750.227b(3).

-4-

in danger of physical injury or death." *People v Biddles*, 316 Mich App 148, 167; 896 NW2d 461 (2016). It appears that OV 9 was scored on the basis that defendant participated in the shooting. Although defendant was acquitted of aiding and abetting in the assault with intent to murder (AWIM) charge, this does not preclude the trial court judge from considering his role in the shooting at the sentencing phase. The revolution in Michigan sentencing law caused by *Lockridge* and its progeny, namely *Steanhouse*, creates an advisory guidelines system. See, e.g., *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015); *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017). The advisory guidelines procedure allows the pre-*Lockridge* system of guidelines scoring based on judicial fact finding to remain constitutionally valid. The factors used in scoring must be found by a preponderance of the evidence; this Court then reviews those findings for plain error. See, *People v Carpenter*, 322 Mich App 523, 528; 912 NW2d 579 (2018). Therefore, the trial court judge is not prohibited from finding that defendant's possession of the firearm, and his passing of the weapon to the shooter prior to one or both of the shootings, placed multiple individuals in danger of physical injury or death.

Given that there was ample evidence in the PSIR and presented at trial that defendant possessed the weapon prior to and after the shooting outside of the nightclub, the trial court was justified in its holding that defendant's actions placed multiple people in danger. Therefore, we hold that the trial court did not err by assigning twenty-five points under OV 9.

## C. SENTENCE DEPARTURE

Defendant next argues that the trial court abused its discretion in imposing a departure sentence. We disagree.

### 1. STANDARD OF REVIEW

Sentences that depart from the guidelines are reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). When reviewing a sentence for reasonableness, the standard of review is abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).

### 2. DISCUSSION

A sentence is reasonable if it complies with the "principle of proportionality" standard set forth in *Milbourn*, 435 Mich 630, and adopted by the Michigan Supreme Court in *Steanhouse II*, 500 Mich at 460-461.

> Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v*

*Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*) (citations omitted), aff'd in part, rev'd in part 500 Mich 453 (2017).

These same factors are also used to determine if "a departure sentence is more proportionate than a sentence within the guidelines range." *People v Dixon-Bey*, 321 Mich App 490, 525 & n 9; 909 NW2d 458 (2017). When departing from the guidelines, a trial court must "justify the sentence imposed in order to facilitate appellate review," *Lockridge*, 498 Mich at 392, by "explain[ing] why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been," *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). See also *Dixon-Bey*, 321 Mich App at 525. Each of the trial court's reasons for departure must be examined to determine if they provided reasonable grounds for the departure. See *Dixon-Bey*, 321 Mich App at 526. If the guidelines adequately address the reasons identified by a trial court, those reasons cannot constitute reasonable grounds for departure. *Id*. Further, an appellate court may not review the record in search for reasons to uphold the sentence that the trial court failed to articulate. *Smith*, 482 Mich at 314 n 50.

When a departure has occurred,

an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. [*Milbourn*, 435 Mich at 659-660.]

However, while the guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion" which courts "must consult," *Lockridge*, 498 Mich at 391, the "key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range," *Milbourn*, 435 Mich at 661. A failure to "provide adequate reasons for the *extent* of the departure sentence imposed" constitutes a violation of the principle of proportionality and, thus, an abuse of discretion. *Steanhouse II*, 500 Mich at 476 (emphasis added).

In this case, the trial court stated that it had considered the guidelines and found them to be "somewhat inadequate for the circumstances of this particular case." The factors the trial court identified in support of the departure were the danger of gun violence to the local community, the seriousness of the particular offense, and defendant's poor potential for rehabilitation. Although some of the factors the court stated as reasons for departure were somewhat considered by the guidelines, those guidelines were not adequately tailored for this specific type of offense, and therefore departure was appropriate. As the trial court noted, felon in possession of a firearm can take many forms, some more dangerous than others. The trial court properly noted that the conduct in the present case, where defendant supplied a weapon for use in an indiscriminate shooting on a busy street, was vastly different than the case of a felon being found in possession of a firearm in their home.

The trial court noted the danger that gun violence presented to the local community and the seriousness of this particular offense. The trial court stated that it held defendant "accountable for . . . possessing a firearm on the streets of Lansing *under these circumstances where a shooting had just taken place by someone else*" (emphasis added). It reasoned that defendant's possession of the firearm under these circumstances was more serious than was ordinarily the case with a felon-in-possession offense. Further, defendant's potential for rehabilitation has been held to be a valid consideration for departure, see *Dixon-Bey*, 321 Mich App at 525 n 9. The fact that defendant was on probation, while accounted for in the guidelines, is further proof of the seriousness of the specific offense and lack of potential for rehabilitation. Defendant was not merely a felon, but was currently being punished for a serious felony offense in a neighboring county. The fact that he proceeded to bring a concealed handgun to a crowded night club and then allow that weapon to be fired into a crowd in an indiscriminate manner is not something that can be adequately captured by the guidelines system. This is precisely the type of situation where the ability to consider all of the evidence and the factors involved in the commission of a crime is more valuable than the rote, mathematical system conceived in a purely determinant sentencing system.

In summary, the trial court, presented with a crime and defendant that do not neatly fit within the sentencing guidelines, properly applied its discretion and articulated valid reasons for doing so and exceeding guidelines by 12 months. Defendant did not fit in to the more benign categories of a felon in possession and, based on the risk of his actions and his apparent lack of rehabilitation, the trial court found departure to be necessary. Therefore, we affirm defendant's sentence.

## D. STANDARD 4 BRIEF

Finally, in a Standard 4 brief,[6] defendant argues that his trial counsel was ineffective for failing to interview Jackson or to call him as a witness.[7] We disagree.

## 1. STANDARD OF REVIEW

The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Findings of fact are reviewed for clear error, while questions of constitutional law are reviewed de novo. *Id*. "Unpreserved issues concerning

---

[6] A "Standard 4" brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

[7] Given our conclusion that defendant is not entitled to be resentenced, we need not address his claim that counsel was ineffective for failing to object to the scoring of OV 9. Additionally, in light of our determination that sufficient evidence supported defendant's convictions, we decline to address his repetitive argument that he is "actually innocent" and therefore entitled to relief under the United States and Michigan Constitutions and MCR 7.216(A)(7).

ineffective assistance of counsel are reviewed for errors apparent on the record." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

## 2. DISCUSSION

There is a strong presumption that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks omitted), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and a defendant has a "heavy burden" to show otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citations omitted).

For an ineffective assistance of counsel claim to be successful, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 688, 694. See also *People v Ullah*, 216 Mich App 669, 684-685; 550 NW2d 568 (1996). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

Examination of counsel's actions must be "highly deferential" and without the benefit of hindsight, *Strickland*, 466 US at 689, and there is a "strong presumption" that counsel's actions arose from "sound trial strategy," *Trakhtenberg*, 493 Mich at 52. This Court must not "substitute [its] judgment for that of counsel on matters of trial strategy . . . " *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Although it is true that a failure to interview witnesses can result in ineffective of assistance, see *People v Caballero*, 184 Mich App 636, 641-642; 459 NW2d 80 (1990), the mere failure to do so is insufficient to show that counsel was ineffective; rather, defendant must show "that the failure resulted in counsel's ignorance of valuable evidence which would have substantially benefited the accused." *Id*. at 642. Defendant on appeal submits an affidavit signed by Jackson asserting that defendant never possessed the gun and that Jackson would have testified accordingly at trial. The affidavit also asserts that trial counsel never interviewed Jackson. In most circumstances, the record cannot be expanded on appeal. *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009); *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

However, the present case provides us with a difficult and unique set of circumstances surrounding defendant's ability to have expanded the record. This Court granted defendant's motion to remand for a *Ginther* hearing and possible new trial based on ineffective assistance of counsel. Defendant proceeded to waive his *Ginther* hearing. Defendant explained, in a letter to this Court, that his reason for doing so was the advice of his appellate counsel. Specifically, appellate counsel showed defendant the transcript from his pretrial conference, during which defendant explicitly stated that after discussing the issue with his attorney, he did not wish to call Jackson at trial. Appellate counsel therefore correctly concluded that, defendant having

discussed the matter on the record and waived Jackson's testimony, a *Ginther* hearing would be pointless. Therefore, counsel was not ineffective in failing to proceed with the *Ginther* hearing.

Furthermore, a defendant has the burden of establishing the factual predicate of an ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). There is no indication from the record that trial counsel failed to interview Jackson. Defendant's claim rests on facts not part of the lower court record, and he failed to "make a testimonial record at the trial court level in connection with a motion for a new trial." *Id*. Furthermore, the decision not "to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court does not substitute its judgment for that of counsel in matters of trial strategy." *Seals*, 285 Mich App at 21. In fact, the lower court record shows that defendant discussed with trial counsel whether to call Jackson as a witness and decided *against* doing so. Defendant cannot now argue that trial counsel was ineffective for adhering to this agreed-upon strategy.

We affirm defendant's convictions and sentences. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle