*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 9, 2020

Plaintiff-Appellee,

v

No. 344646
Berrien Circuit Court
LC No. 2017-000478-FC

RICHARD LEE HOPKINS,

Defendant-Appellant.

Before: O'BRIEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant, Richard Lee Hopkins, was convicted after a jury trial of three counts of first-degree criminal sexual conduct with a person under the age of 13 in violation of MCL 750.520b(2)(b) (first-degree CSC), three counts of second-degree criminal sexual conduct with a person under the age of 13 in violation of MCL 750.520c(2)(b) (second-degree CSC), and three counts of disseminating sexually explicit matter to a minor in violation of MCL 722.675. The trial court also found defendant to be a fourth offense habitual offender under MCL 769.12. Defendant was sentenced to 420 months to 630 months' imprisonment for each first-degree CSC conviction, 132 months to 240 months' imprisonment for each second-degree CSC conviction, and 36 months to 180 months for each disseminating conviction, with all sentences to be served concurrently. Defendant appeals as of right. We vacate defendant's convictions and sentences, and we remand for further proceedings.

## I. FACTS

This case involves two minor victims, JB and JNB. At the time of the incidents in late 2016, JB was ten years old and her sister, JNB, was nine years old; defendant was 64 years old. At that time, the two victims lived with their mother in rental property owned by defendant. In 2015, defendant began to socialize with the children. In late 2015, the victims' mother agreed to defendant's suggestion that he babysit the two girls for free while she was at work; defendant babysat the victims regularly beginning in late 2015.

JB testified that shortly before Christmas in 2016, the girls were at defendant's home and she and JNB were in defendant's bedroom playing. Defendant entered the room and told the girls

-1-

to take off their clothes; the girls removed their clothes and defendant removed his clothing. JB testified that defendant and the girls got in bed and defendant rubbed his "ding-a-ling" (penis) on her vaginal area and also licked her vaginal area. She further testified that he did the same thing to JNB, but that she did not observe all of the conduct between defendant and JNB because defendant gave her his phone to play with. JNB testified similarly regarding this event.

JB further testified that she and JNB watched sexually explicit movies while sitting on the couch with defendant; while watching a sexually explicit movie with defendant, he grabbed his penis on the outside of his clothing while the girls were sitting on either side of him. JNB testified similarly about this event and also testified that defendant told the girls not to tell about watching the movie.

JB also testified that she and JNB saw photos on defendant's computer that included photos of defendant's penis, a photo of a man dressed as a woman, and a photo of a naked girl chained up being whipped by defendant. She testified that when the girls saw one of the photos they called defendant into the room; he told them that they should not be looking at the photos, but then sat down with the girls and scrolled through additional photos, many of which were of defendant's penis. JNB testified similarly to this event.

JNB testified that defendant also sexually assaulted her on another occasion; she testified that she was alone in defendant's bedroom "trying on stuff" when he entered the bedroom and removed from a drawer a "fake wiener and a spikey ball," and then put the objects in her "butt," and that afterwards she saw "a little bit of blood" on her bottom and vaginal area.

JNB testified that she eventually disclosed the abuse to their mother, and then to her therapist. The children's mother, however, testified that she did not learn of the abuse until Child Protective Services workers came to her home to remove the children from her care. Defendant was thereafter convicted of three counts of first-degree CSC, three counts of second-degree CSC, and three counts of disseminating sexually explicit matter to a minor. Defendant now appeals.

## II. ANALYSIS

### A. VOUCHING TESTIMONY

Defendant first contends that the trial court abused its discretion by admitting the testimony of two witnesses called by the prosecution, Cynthia Bridgman and Brooke Rospierski, wherein the witnesses vouched for the truthfulness of the two victims. We agree.

### 1. STANDARD OF REVIEW AND PRINCIPLES OF LAW

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion, *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019), which occurs when the trial court chooses an outcome outside the range of principled outcomes. *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014). When a decision regarding the admission of evidence involves a preliminary question of law, such as whether a rule of evidence permits admission of the evidence, we review that issue de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

"Preserved nonconstitutional errors are subject to harmless-error review under MCL 769.26." *Thorpe*, 504 Mich at 252. MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

If an evidentiary challenge is preserved, "the defendant has the burden of establishing a miscarriage of justice under a 'more probable than not' standard." *Thorpe*, 504 Mich at 252. Preserved nonconstitutional errors are presumed not to be grounds for reversal unless it affirmatively appears that, "more probably than not, it was outcome determinative," meaning that it undermined the reliability of the verdict. *Douglas*, 496 Mich at 566 (quotation marks and citation omitted). If an error is unpreserved, whether the error is constitutional or nonconstitutional, the defendant must show that there has been a plain error affecting his or her substantial rights, and "the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Thorpe*, 504 Mich at 252-253. In this case, defendant objected to the testimony of Cynthia Bridgman at trial on the same ground now raised on appeal, thereby preserving the issue for review by this Court. See *id*. at 252. Defendant did not object to the testimony of Brooke Rospierski, however, and thus his challenge to the trial court's admission of that evidence is unpreserved. *Id*.

In *Thorpe*, our Supreme Court recently clarified that "expert witnesses may not testify that children overwhelmingly do not lie when reporting sexual abuse because such testimony improperly vouches for the complainant's veracity." *Id*. at 235. That case involved two consolidated cases in which the defendant in each case had been convicted of child sexual abuse. In the case involving defendant Thorpe, the prosecution presented an expert witness who was permitted by the trial court to testify as an expert in the area of child sexual abuse and disclosure. On direct examination, the expert witness testified about the cost/benefit analysis that children make when deciding whether to disclose abuse and reasons a child might delay disclosure. On cross-examination, defense counsel asked the witness whether children can lie or manipulate, and the witness agreed that they could. *Id*. at 239. On redirect, the prosecution asked the expert witness "what, in your experience, if you can say, is the percentage of children who actually do lie [about the sexual assault itself]." *Id*. Over objection by defense counsel, the witness responded that "probably two to four percent of the cases that we get hav[e] children alleging . . . sexual abuse when abuse did not actually occur." *Id*. at 240. The witness then identified two scenarios in which children are likely to lie about sexual abuse, neither of which was a scenario present in that case. *Id*.

The defendant in that case was convicted, and this Court affirmed his convictions. Our Supreme Court reversed and remanded to the trial court for a new trial. *Id*. at 266. The Court stated:

> We conclude that [the defendant] has shown that it is more probable than not that a different outcome would have resulted without [the expert's] testimony

that children lie about sexual abuse 2% to 4% of the time. In [*People v*] *Peterson* [, 450 Mich 349; 537 NW2d 857 (1995)], this Court observed that nearly identical testimony allowed "the experts in that case [to] improperly vouch [] for the veracity of the child victim." Here, not only did [the witness] opine that only 2% to 4% of children lie about sexual abuse, but he also identified only two specific scenarios in his experience when children might lie, neither of which applies in this case. As a result, although he did not actually say it, one might reasonably conclude on the basis of [the expert's] testimony that there was a 0% chance [the child] had lied about sexual abuse. In so doing, [the expert] for all intents and purposes vouched for [the child's] credibility. [*Thorpe*, 504 Mich at 259 (footnotes omitted).]

The Court also explained:

[The defendant's] trial was a true credibility contest. There was no physical evidence, there were no witnesses to the alleged assaults, and there were no inculpatory statements. The prosecution's case consisted of [the child's] allegations, testimony by her mother regarding [the child's] disclosure of the alleged abuse and behavior throughout the summer and fall of 2012, and [the witness'] expert testimony. [The defendant] testified in his own defense and denied the allegations. Additionally, [the defendant's mother] testified about other reasons for [the child's] behavior during the summer and fall of 2012; namely, that her mother had started a new relationship and become pregnant and that [the defendant] had decided to no longer have parenting time with [the child]. Because the trial turned on the jury's assessment of [the child's] credibility, the improperly admitted testimony wherein [the expert witness] vouched for [the child's] credibility likely affected the jury's ultimate decision. Under these circumstances, we conclude that [the defendant] has shown that it is more probable than not that a different outcome would have resulted without [the expert's] improper testimony. [*Id*. at 260.]

In so holding, our Supreme Court referenced its earlier decision in *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995) in which the Court stated that it reaffirmed its earlier holding in *People v Beckley*, 434 Mich 691; 465 NW2d 391 (1990), that "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." *Peterson*, 450 Mich at 352. However, "an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim" and also may testify "with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id*. at 352-353.

## 2. EXPERT WITNESS CYNTHIA BRIDGMAN

One of the witnesses called by the prosecution was therapist Cynthia Bridgman, whom the trial court permitted to testify as "an expert in the field of child abuse and treatment and therapy." She testified that she had provided therapy to JB and JNB. On direct examination, Bridgman testified, in pertinent part:

And so children's statements are often labeled as inconsistent or not credible when, actually, they're very credible. The research on credibility shows that kids rarely make up abuse allegations. In fact, there was one study where 43 percent of all of the clients had a sex--

Defense counsel objected, arguing that the witness was vouching. The trial court admitted the testimony into evidence, determining that Bridgman's testimony related to studies regarding the truthfulness of children generally when alleging sexual assault and not whether the children in this case were being truthful.[1]

In this case as in *Thorpe*, the expert witness testified that as an expert, he or she could assure the jury that it was unlikely that the children were lying because research demonstrated that children rarely lie about sexual abuse. As in *Thorpe*, defense counsel in this case objected to the testimony at trial, preserving the issue for review by this Court, and as a result "the defendant has the burden of establishing a miscarriage of justice under a 'more probable than not' standard." *Thorpe*, 504 Mich at 252. Similarly, in this case as in *Thorpe*, the trial was largely a credibility contest; the victims testified that the abuse occurred, and defendant testified that the abuse did not occur. Thus, as in *Thorpe*, because "the trial turned on the jury's assessment of [the child's] credibility, the improperly admitted testimony wherein [the expert witness] vouched for the [child's] credibility likely affected the jury's ultimate decision." *Id*. at 260.

We are mindful that Bridgman's improper testimony was less egregious than the testimony at issue in *Thorpe*. And while *Thorpe* makes it clear that an evidentiary error does not automatically require reversal, we cannot hold that Bridgman's testimony had no impact on the jury.

### 3. EXPERT WITNESS BROOKE ROSPIERSKI

The prosecution also called as a witness Brooke Rospierski, who testified "as an expert in the field of forensic interviewing and disclosure of sexual abuse in children." Defendant contends that Rospierski also impermissibly vouched for the credibility of the complainants. The testimony now challenged on appeal was in response to a question by the prosecution, as follows:

Q: Okay. And did you have any concerns that [the complainants] were coached or pressured, fabricating these allegations?

A: I never had any red flags that either child was coached or pressured to fabricate any allegations.

---

[1] Bridgman went on to testify on direct examination that "the research indicates very clearly that it's more likely a child will deny being sexually abused than to falsify a statement that they have been sexually abused." Defendant did not object to that statement. On cross-examination, she agreed that a child who had previously been abused, as was the case for both victims here, would also be more likely to understand the seriousness of the matter and know how to report it.

In *Douglas*, the defendant was charged with child sexual abuse. The forensic interviewer who interviewed the child victim testified as an expert, and in response to questions by the prosecutor testified that she believed that the child had not been coached but rather was being truthful during her interview with the child. *Douglas*, 496 Mich at 570. In *Douglas*, the child protective services worker also was called by the prosecution and testified that she would not have sought a petition if she thought the child was lying and that there was no indication that the child had been coached or was being untruthful. *Id*. Our Supreme Court held that the testimony that the child had not been coached and was being truthful when talking to the witness was inadmissible because it "violated the well-established principle that it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *Id*. at 583 (quotation marks and citation omitted).

The "bright-line rule" is that an expert cannot simply testify that a victim was telling the truth based on the victim's say-so; but may testify to the ultimate truth of the matter based on physical findings, medical history, and the expert's experience and training. *Thorpe*, 504 Mich at 254-256, 262; *People v Smith*, 425 Mich App 98, 101, 106, 109-112; 387 NW2d 814 (1986). We conclude that Rospierski's comment crossed the "bright line." The phrase "red flags" carries a disproportionate emotional punch and amounts to a summary conclusion of the witnesses' truthfulness. As in *Douglas*, this statement was inadmissible and impermissibly prejudicial. We conclude that although defendant's challenge to this testimony is unpreserved, the introduction of this testimony constituted plain error affecting defendant's substantial rights. See *Thorpe*, 504 Mich at 252-253.

## B. EXCLUSION OF IMPEACHMENT EVIDENCE

Defendant contends that the trial court abused its discretion by excluding the admission of evidence that the victims in this case regularly played a "lying game." Although the record regarding the "lying game" is tenuous, we agree.

During defendant's preliminary examination, JB admitted on cross-examination that she wanted to go home and thought that she could go home if she told the police and prosecutor what they wanted to hear. She also told "the lady at the Child Assessment Center" what she felt the lady wanted to hear. Defense counsel then engaged in the following colloquy:

Q:    Had the two of you ever bragged to each other about who as the best liar?

A:    Yes.

Q:    You have had competitions between the two of yourself [sic] as to who could tell the best lie; is that correct?

A:    Yes.

Counsel did not inquire into the lying game further with JB. While cross-examining JNB at the preliminary examination, the following colloquy occurred:

Q:    And you're close to your sister, [JB], is that correct? You like each other?

A:    Yes.

Q:    You have a lot of contact with her, is that correct?

-6-

A:      Yes.

Q:      And you share things with each other, is that correct?

A:      Yes.

Q:      You like her, don't you?

A:      Yes.

Q:      And you and your sister [JB] play games together from time to time, don't you?

A:      Yes.

Q:      You and her play a game of trying to see who can lie the best.  Don't you?

A:      Yes.

Q:      And you play that game a lot?

A:      Yes.

Q:      Have for a long time, is that correct?

A:      Yes.

Again, counsel did not inquire any further into the lying game.

Before trial, the prosecution brought a motion in limine to exclude reference at trial to the victims playing the "lying game."  The prosecution argued that under MRE 608 the evidence was not admissible as character evidence.  Defense counsel argued that the evidence was not an attack on character, but was instead admissible under MRE 404b(1) as proof of motive, opportunity, and intent.  The trial court ruled:

> Okay.  Well, this is how I rule on this one.  I don't find that this is relevant. I don't think that, Mr. Parish, you made a connection between this game they play and indication that they've ever, in terms of your – your argument about scheme and plan, ever made up this lie in the course of a game that asserted either a criminal sexual assault or – allegation like that or any criminal offense at all.
>
> It's a kids['] game, and I don't believe that it is relevant in this case.  What's relevant is whether or not they're telling the truth here and not whether or not they're playing childhood games.  So I'm not going to allow that in.

MRE 404(a)(4) prohibits the admission of character evidence of a person to prove that the person acted in conformity with that character trait, except, in relevant part, "as provided in Rules 607, 608, and 609."  MRE 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness."  MRE 608 permits the impeachment of a witness with character evidence as follows, in pertinent part:

> **(a) Opinion and Reputation Evidence of Character.**  The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible

only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

**(b) Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Our Supreme Court has explained the difference between credibility and character, as follows:

Credibility is defined as "[w]orthiness of belief; that quality in a witness which renders his evidence worthy of belief." Black's Law Dictionary (6th ed), p 366. Credibility may be attacked in numerous ways, e.g., demonstrating a witness' inability to perceive or remember the event at issue. Attacking a witness' character for truthfulness is one of the means by which a witness' credibility may be attacked. Thus, the two terms are not synonymous; rather, character for truthfulness is a specific aspect of credibility. MRE 608(a) states that "credibility" may be attacked or supported by opinion or reputation evidence, subject to two limitations: 1) that the evidence refer only to "character for truthfulness" and 2) that evidence supporting a witness' "character for truthfulness" is only admissible after the witness' "character for truthfulness" has been attacked. [*Lukity*, 460 Mich at 490.]

In this case, defendant sought to attack the credibility of the victims by attacking their character for truthfulness, which defendant sought to do by evidence that the victims told lies as part of a game or competition between them. Because MRE 608 permits the credibility of a witness to be attacked by opinion or reputation evidence that refers to their "character for truthfulness or untruthfulness," the evidence was admissible.

Because the instant matter was mostly a credibility contest, we cannot agree with the trial court that the evidence was not relevant. See MRE 401. Nevertheless, although the trial court erred, it is difficult for us to say on this record how much impact the error had on the outcome of the proceedings. In particular, beyond the bare existence of this game, we know essentially nothing about it, and defendant has not provided any offer of proof in the trial court or in this Court. We do not, for example, know if the "lying game" was only between the two sisters, if it ever involved adults, whether it was limited in subject matter or scope, or literally anything beyond the minimal colloquies above. Nonetheless, the evidence was admissible and its exclusion error.

## C. EVIDENCE OF PORNOGRAPHY ON DEFENDANT'S COMPUTER

Defendant next contends that the trial court abused its discretion when it permitted the introduction of evidence of images of adult pornography that were contained on defendant's

computer. Defendant argues that the images were not relevant and were unfairly prejudicial. We disagree.

Defendant was charged with three counts of disseminating sexually explicit matter to a minor in violation of MCL 722.675. To prove guilt of disseminating sexually explicit matter to a minor, the prosecutor must establish that the defendant (1) knowingly disseminated to a minor sexually explicit visual or verbal material that is harmful to minors, or knowingly exhibited to a minor a sexually explicit performance that is harmful to minors, (2) was aware of the material's sexually explicit character and content, or recklessly disregarded circumstances suggesting its character and content, and (3) was either aware that the person to whom the dissemination is made is under 18 years of age, or recklessly disregarded a substantial risk that the person to whom the dissemination is made is under 18 years of age. MCL 722.675.

The term "sexually explicit matter" includes "sexually explicit visual material." MCL 722.673(f). "Sexually explicit visual material" is defined in MCL 722.673(i) in part as meaning "a picture, photograph, drawing, sculpture, motion picture film, video game, or similar visual representation that depicts nudity, sexual excitement, erotic fondling, sexual intercourse, or sadomasochistic abuse, or a book, magazine, or pamphlet that contains such a visual representation." MCL 722.671(b) defines "disseminate" as "to sell, lend, give, exhibit, show, or allow to examine. . . ." "Exhibit" is defined, in part, as "[p]resent a performance," MCL 722.671(c)(i), and " 'sexually explicit performance' means a motion picture, video game, exhibition, show, representation, or other presentation that, in whole or in part, depicts nudity, sexual excitement, erotic fondling, sexual intercourse, or sadomasochistic abuse." MCL 722.673(g). See *People v Lockett*, 295 Mich App 165, 180-181; 814 NW2d 295 (2012).

Generally, relevant evidence is admissible at trial. MRE 402; *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001).

Photographic evidence is generally admissible if it is relevant under MRE 401, and not unduly prejudicial under MRE 403. *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). Photographs are admissible if they are substantially necessary or instructive to show material facts or conditions, and warrant exclusion only when the probative value of the evidence is outweighed by the danger of unfair prejudice. *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018). Photographs may be used to corroborate the testimony of a witness. *Id*.

MRE 403 provides that relevant evidence may warrant exclusion if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). When reviewing a trial court's decision for an abuse of discretion, this Court views the evidence in the light most favorable to its proponent, giving the evidence "its maximum reasonable probative force and its minimum reasonable prejudicial value." *People v*

*Head*, 323 Mich App 526, 540, 917 NW2d 752 (2018); see also *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018) ("All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations").

In this case, the record supports the trial court's holding that the pornographic images on defendant's computer were relevant to corroborate the testimony of the complainants that they had seen the images, which was relevant to the charges that defendant had disseminated sexually explicit matter to a minor. JB testified that she and JNB viewed the pornography on defendant's computer, and that when he discovered them looking at the pornography on the computer, he scrolled through additional pornographic images on the computer while they watched. The pornographic images introduced were similar to those described by the victims and thus corroborated their testimony that they had seen the images on the computer. Although defendant argues that the images were improperly admitted at trial under MRE 404(b), the trial court ruled that the images were not admissible under MRE 404(b) but rather were admissible as corroborative of the complainants' testimony that they had seen the images on defendant's computer. In addition, defendant has failed to demonstrate that it was unfairly prejudicial. Although there was testimony that over 500 pornographic images were found on defendant's computer, the trial court limited the number of images that the prosecution was permitted to introduce to avoid the cumulative nature of the images. The trial court's decision to admit the evidence therefore does not fall outside the range of principled outcomes, and therefore was not an abuse of the trial court's discretion.

## D. DNA EVIDENCE

Defendant next contends that the trial court abused its discretion by permitting the introduction of the analysis of DNA evidence that found that there was "very strong support" for the conclusion that both defendant and JNB contributed DNA to an object found at defendant's home by police and described by JNB as the "spikey ball" and referred to at trial as the "pink cock ring." We disagree.

Defendant did not object to the introduction of the DNA evidence, and his challenge to the evidence is therefore unpreserved. See *Thorpe*, 504 Mich at 252. This Court reviews an unpreserved allegation of error, whether the error is constitutional or nonconstitutional, for error affecting the defendant's substantial rights, and "should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*. at 252-253.

As discussed, relevant evidence generally is admissible at trial. MRE 402; *Bergman*, 312 Mich App at 483. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *Aldrich*, 246 Mich App at 114.

In this case, JNB testified that while she was in defendant's bedroom "trying on stuff," defendant entered the room and took some items from a drawer, including an object she described as a "spikey ball." She then testified that defendant "put[] the spikey ball inside my butt." JNB

-10-

also testified that she earlier had touched the spikey ball with her hand when looking through the drawer. The prosecutor called as a witness a forensic scientist in the DNA unit of the biology laboratory of the Michigan State Police, who testified that the DNA analysis very strongly suggested that JNB's DNA was present on the pink cock ring. This evidence has the tendency to corroborate JNB's testimony that she had physical contact with the object, which is a fact that is of consequence to the determination of whether it is more probable or less probable that defendant sexually assaulted her with the object. See MRE 401.

The DNA analysis does not demonstrate whether the DNA came from JNB touching the object with her hand or whether defendant put it "inside her butt" as she testified. However, as discussed, "[a]ll relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations." *Sharpe*, 502 Mich at 333. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury. *Dixon-Bey*, 321 Mich App at 513. In this case, it is arguable that the DNA is only marginally probative; however, when reviewing a trial court's decision for an abuse of discretion, this Court views the evidence in the light most favorable to its proponent, giving the evidence "its maximum reasonable probative force and its minimum reasonable prejudicial value." *Head*, 323 Mich App at 540. Applying that standard in this case, the trial court did not abuse its discretion by admitting the DNA analysis into evidence.

### E. VOUCHING BY PROSECUTOR

Defendant contends that the trial court abused its discretion by denying his motion for mistrial after the prosecutor vouched for the credibility of the victim and another witness, KC. Again, we disagree.

This Court reviews the trial court's denial of a motion for mistrial for an abuse of discretion, *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003), which occurs when the trial court's decision falls outside the range of principled outcomes. See *Thorpe*, 504 Mich at 251-252. "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citation omitted). To succeed on a motion for mistrial, the moving party is required to demonstrate that the "error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id.* (quotation marks and citation omitted). In ruling on a defendant's motion for mistrial, the trial court may consider whether the prosecutor intentionally introduced or emphasized improper information. *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014).

In this case, during the prosecutor's closing argument, the prosecutor stated regarding the testimony of the victims that defendant sexually assaulted them that ". . . they have been saying this because it's the truth" and "It's because they're telling the truth." During the prosecutor's rebuttal closing argument, the prosecutor stated in pertinent part:

> Well, we know the time they were really truthful in 2014 when they said they were molested by [RB; he] admitted to it. He pled guilty, admitted to molesting those girls.

-11-

And we also know they were telling the truth then, too, because of the injuries that they sustained in their genital area. They had extensive injuries. They were telling the truth then, and they're telling the truth now, ladies and gentlemen.

And further:

Now [defense counsel] mentioned, just because one person says something, does that mean it's true? Well, what about three people who are saying the same thing? Does that make it true? It does, especially, when they have the same details. This is not just one person saying that the defendant molested them; it's three people.

We already talked about how [JB] and [JNB] had no reason to lie about this. Well, let's talk a little bit about [KC] because she's one of the-the people that says he molested her.

Defense counsel then asked to approach the bench and moved for a mistrial on the basis that the prosecutor was vouching. The trial court denied the motion, stating that the prosecutor had not been vouching. Defense counsel asked that his objection be considered a continuing objection, which the trial court took under consideration. The trial court then cautioned the prosecutor in her phraseology and to refrain from injecting her personal opinion.

A prosecutor is not permitted to vouch for the credibility of a witness by suggesting that he or she has some special knowledge regarding the witness's truthfulness. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). However, a prosecutor is permitted to argue from the facts in evidence that a witness is worthy of belief, "especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). In addition, a prosecutor has wide latitude when arguing facts and reasonable inferences. *Seals*, 285 Mich App at 22. A prosecutor may argue from the facts that a particular witness should be believed, as long as the prosecutor does not "vouch for the credibility of witnesses by claiming some special knowledge with respect to their truthfulness." *Id*.

In this case, the prosecutor asserted on several occasions that the witnesses were telling the truth. The trial court properly admonished the prosecutor for doing so. However, this was in the context of the prosecutor discussing the specific facts that the prosecutor argued supported that each witness was testifying truthfully. The prosecutor did not suggest that she had some special knowledge that the witness was being truthful. Because a prosecutor is permitted to argue that a witness is credible, the trial court in this case did not abuse its discretion by denying defendant's motion for mistrial.

## F. CUMULATIVE ERROR

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). The effect of the errors must be seriously prejudicial to warrant a finding that the cumulative error denied the defendant a fair trial. *People v Schrauben*, 314 Mich App 181, 193; 886 NW2d 173 (2016). Each error need not be "of a kind that shock the judiciary."

*Haynes v Seiler*, 16 Mich App 98, 103; 167 NW2d 819 (1969).  However, each error must be of some consequence.  *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001).  On this record, we have identified the improper testimonies from two expert witnesses and the improper exclusion of evidence of the "lying game."  We can determine with confidence that in combination,[2] they undermined the fairness of defendant's trial.  We must therefore vacate defendant's convictions and sentences, and remand for a new trial.

## G.  SENTENCING

Defendant also contends that the trial court impermissibly considered his sexual orientation and sexual habits when sentencing defendant.  In light of our vacation of defendant's convictions and sentences, we need not decide the merits of defendant's sentencing challenge.  However, we observe that the trial judge's comments at sentencing suggest that the trial court impermissibly relied upon irrelevant information when sentencing defendant.  The trial court stated:

> While it is true, as [defense counsel] said, it's not illegal to be gay – or, in your case, I think it's more appropriate what your stepdaughter said, you're bisexual - you have a right to dress up in dresses and makeup; you have a right to have your adult friends come over, dress up, too; and you have the right to have them use sexual toys on you and sexual toys on them and then take photographs of what you were doing to each other to memorialize those moments.  You have a right to do those things, but that doesn't make it right.
>
> Your behavior, as revealed in this trial, was sick, unhealthy, and depraved.  I don't think because you're gay or bisexual or even a crossdresser that makes you a child molester; but, in your case, it is the depth of your depravity that eliminated any inhibitions, in my opinion, you might have had – if you ever had any inhibitions – of turning your sexual attention to young kids.

The trial court's comments suggest that the sentence imposed was improperly influenced by the trial judge's view of defendant's sexual orientation or sexual proclivities in general, rather than based upon the specific conduct in this case.  Given the trial court's strongly-expressed views, we conclude that the trial judge would reasonably be expected to have substantial difficulty putting out of his mind his views previously expressed, and also conclude that reassignment of this case is necessary to preserve the appearance of justice.  *People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019) (A case should be assigned to a different trial judge if, based upon the judge's previous handling of the case, it would be unreasonable to expect the trial judge to put aside previously expressed views, and also when reassignment is advisable to preserve the appearance of justice).

---

[2] We do not resolve whether any of these errors alone would warrant reversal.

Vacated and remanded for a new trial or other proceedings as the trial court and parties deem necessary or appropriate. On remand, the matter is to be assigned to a different trial judge. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola