*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
June 18, 2020

v

No. 346813
Kalamazoo Circuit Court
LC No. 2018-000862-FC

ANTHONY WILLIAM QUINN,

Defendant-Appellant.

Before: MURRAY, C.J., and JANSEN and MARKEY, JJ.

PER CURIAM.

A jury convicted defendant of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (sexual penetration by a person 17 years of age or older involving a victim under 13 years old), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b) (sexual contact by a person 17 years of age or older involving a victim under 13 years old). The trial court sentenced defendant to 25 to 40 years' imprisonment for the CSC-I conviction and 3 to 15 years' imprisonment for the CSC-II conviction. We affirm.

This case arises out of the repeated sexual assault of a child, MM, over the course of several years when she was between the ages of four and six. MM, who was 14 years old at the time of trial, testified that defendant is her uncle and that they had been "really close." She also stated that defendant sexually abused her on several occasions by rubbing her vagina after making her remove her pants. MM further testified to acts of penile-vaginal penetration and fellatio perpetrated. She additionally indicated that defendant had forced her to touch his penis. According to MM, defendant threatened to hurt her grandmother if she ever disclosed the sexual abuse to anyone. MM never told anyone at the time because she was afraid.

MM testified that the first time that she spoke to anyone about the sexual assaults was at a child advocacy center. MM did not really know why she had an appointment at the center because she had never told anyone about the abuse. She assumed "that somebody had suspected something or something had happened to somebody else."

Detective Jason Gates interviewed defendant. Defendant admitted to "touching [MM] on her vaginal area, [and] manipulating the skin of the vagina." Defendant stated that it had happened

about five times. He felt guilty because MM was family and because his conduct was not appropriate in light of MM's age. Defendant also repeatedly indicated that he could not clearly recall the sexual assaults because he was "really messed up back then because of substance abuse." He admitted that there had been occasions where he was alone with MM.

In the interview, Detective Gates asked defendant if MM would have any motive to lie about her allegations, and defendant stated that she did not have any motive to fabricate. Further, defendant conceded that "if [MM] said it happened, it must have happened." Defendant mentioned several times that his memories may be obscured for any number of reasons. Detective Gates testified that to the best of his knowledge MM had not initially disclosed the abuse to family members.

Thomas Cottrell, an expert in child sexual abuse and offender behaviors, testified that it was very common for delays to occur in disclosing sexual abuse, including delays lasting many years. Cottrell also explained that children's memories of sexual abuse may be disjointed because children process those memories in "snapshots as opposed to video," which memories "may be very powerfully connected to emotion." According to Cottrell, children disclosing abuse will often have "spotty" memories because the trauma results in their only remembering bits and pieces of each occurrence. Cottrell observed that children remember certain details that are relevant to them, such as which pajamas they were wearing, but do not recall other things, including the house they were in or the time of year the abuse occurred.

On appeal, defendant contends that the prosecutor vouched for the credibility of MM in his rebuttal closing argument, thereby depriving defendant of his state and federal due process rights to a fair trial. Defendant also argues that trial counsel was ineffective for failing to object to the prosecutor's improper vouching.

We initially conclude that given the evidence of defendant's guilt, including defendant's own admissions to Detective Gates, any assumed prosecutorial misconduct did not affect defendant's substantial rights, nor did it result in the conviction of an actually innocent defendant or seriously affect the integrity, public reputation, or fairness of the judicial proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). This is especially true considering the context of defendant's improper-vouching argument on appeal, where defendant himself told police that MM had no reason to lie about the sexual abuse. Any prejudice was also alleviated or dispelled by instructions to the jury that the attorneys' arguments were not evidence. See *People v Bahoda*, 448 Mich 261, 281; 531 NW2d 659 (1995). And any assumed deficient performance by counsel in not raising an objection was clearly not prejudicial. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).

Furthermore, defendant's arguments lack substantive merit. In *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007), this Court observed:

> Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this

Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [Quotation marks and citations omitted.]

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* Although a prosecutor may not vouch for the credibility of a witness by suggesting that he or she has some special knowledge of the witness's truthfulness, *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009), "prosecutorial arguments regarding credibility are not improper when based on the evidence, even if couched in terms of belief or disbelief," *Unger*, 278 Mich App at 240.

During the prosecutor's rebuttal closing argument, he made the following remarks to the jury:

> When people are trying to get someone in trouble or when they're embellishing, they go and they tell relatives and try and do things like that. There's none of that in this case. No relatives at all have we heard from who knew anything about this. In fact, she testified, all of a sudden, I was just taken to this place and I got interviewed. It's because she revealed it, the evidence will show, to a counselor.

Defendant argues that these remarks constituted improper vouching for MM's credibility based on some "special knowledge of the prosecutor about how untruthful complainants behave." Defendant further contends that the prosecutor "was essentially offering expert testimony about the way sexual abuse victims act—they tell counselors and not their families—without any support for this proposition whatsoever." Citing MRE 803A, defendant also maintains that the prosecutor "should have been well-aware that the rules of evidence would prohibit family members from testifying about what MM told them."

We first note that the prosecutor absolutely did not vouch for the victim's credibility by suggesting that he had some special knowledge of her truthfulness. Moreover, defendant does not frame his argument in this manner. Defendant essentially argues that the prosecutor was not qualified to opine that when a child victim does not tell family members about alleged sexual abuse, it is indicative that the victim is not lying or trying to get the defendant in trouble. Defendant characterizes this as misconduct in the form of improper vouching.

MM testified that she did not know why she had an appointment at the child advocacy center because she had never disclosed the sexual abuse to anyone. Detective Gates testified that, to his knowledge, MM had not disclosed the sexual abuse to her family. Therefore, there was evidence that MM had not informed family members concerning the sexual assaults and that she first disclosed the abuse to a counselor at the child advocacy center. All that the prosecutor was communicating to the jury was that if MM was lying about the sexual abuse in order to get defendant in trouble, the easy route to do so would simply have been to tell family members, which was not done, and it was not the avenue by which the abuse came to be disclosed. This was a

logical, common-sense argument on credibility that could reasonably be inferred from the evidence without the need for supporting expert testimony. See *People v Ringsted*, 90 Mich 371, 374; 51 NW 519 (1892) (The prosecutor "was but asking the jury to apply to the facts in hand, inside of the jury-room, the same good common sense that they would exercise in coming to a conclusion upon the same state of facts outside of the jury-room. Jurors are not to be debarred from using common sense in drawing inferences from testimony[.]").

With respect to defendant's argument that the prosecutor "should have been well-aware that the rules of evidence would prohibit family members from testifying about what MM told them," we find that it is irrelevant because there was no evidence that MM actually disclosed the sexual molestation to a family member. Moreover, had there been such a disclosure when MM was a few years younger, it could potentially have been admitted under MRE 803A if the criteria in the rule were satisfied. In sum, there was no plain error from allowing the prosecutor to make the challenged statements. With respect to defendant's associated claim of ineffective assistance of counsel, we conclude that defense counsel's failure to object to the prosecutor's argument did not fall below an objective standard of reasonableness, *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000), because counsel is not ineffective for failing to raise a futile or meritless objection, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

We affirm.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Jane E. Markey